**In re WICAT SECURITIES LITIGATION.**

**Civ. No. C83–1117G.**

United States District Court, D. Utah, C.D.

Sept. 8, 1987.

Peter W. Billings, Jr., Rand M. Elison, Fabian & Clendenin, Salt Lake City, Utah, for plaintiffs Lee and Edith Woods, Bruce Youngman, Robert A. and Lou Ann Greco, William B. Weinberger.

John E. Grasberger, Milberg, Weiss, Bershad, Specthrie & Lerach, San Diego, Cal., for plaintiff William B. Weinberger.

Stanley M. Grossman, Pomerantz, Levy, Haudek, Block & Grossman, New York City, for plaintiff Guillermo Astudillo.

Irving Malchman, Kaufman, Malchman & Kirby, New York City, for plaintiff Lawrence Epstein.

Joseph Weiss, Robert S. Schachter, Goodking, Wechsler, Labaton & Rudoff, New York City, for plaintiff Nessim Husni.

Arthur N. Abbey, Ralph L. Ellis, Abbey & Ellis, New York City, for plaintiffs Robert A. and Lou Ann Greco.

Leonard Barrack, Gerald J. Rodos, Edward M. Gergosian, Barrack, Rodos & Bacine, Philadelphia, Pa., for plaintiffs Lee and Edith Woods.

Harvey Greenfield, New York City, for plaintiff Guillermo Astudillo.

I. Stephen Rabin, Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff Bruce Youngman.

David E. West, Armstrong, Rawlings, West & Brown, Salt Lake City, Utah, David B. Gold, Paul F. Bennett, Richard A. Rogoff, San Francisco, Cal., for plaintiff Thomas Quinn.

Daniel L. Berman, Peggy A. Tomsic, Berman & Anderson, Salt Lake City, Utah, for defendants Dustin H. Heuston, Nancy Heuston, Robert Mendenhall, Frank M. Richardson, W. Paul Warnock, Wicat Systems, Inc. & Wicat Educ. Institute.

Dale H. Kimball, Robert S. Clark, James D. Gordon, Rooker, Larsen, Kimball & Parr, Salt Lake City, Utah, Phillip K. Howard, Jack P. Levin, Howard, Darby & Levin, New York City, for defendants C. Victor Bunderson, W.H. Conroy, Seth H. Dubin, Dr. Thomas Duerden, Simon M. Robertson, Arthur G. Altschul and The Independent Inv. Co.

David B. Watkiss, Watkiss & Campbell, Salt Lake City, Utah, Gary L. Francione, Thomas D. Barr, Robert D. Joffe, Cravath, Swaine & Moore, New York City, for defendants Blyth Eastman Paine Webber, Inc., Hambrecht & Quist, Inc., Kleinwort Benson, Inc., and Kleinwort Benson, Ltd.

Neal B. Christensen, Salt Lake City, Utah, for defendant Berman D. Anderson.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

The instant case is before the court on a motion by counsel for plaintiffs to receive an award of attorney fees and reimbursement of expenses from a common fund created by reason of the approved settlement of this class action litigation. The procedural history of the case is outlined to facilitate analysis of the fee issue.

### HISTORY

1. September 29, 1983: A complaint was filed on behalf of plaintiffs Robert A. Greco and Lou Ann Greco as class representatives of those who purchased the common stock of WICAT Systems, Inc. ("WICAT") from June 30, 1983 through September 16, 1983. WICAT, individual members of the board of directors of WICAT, and the lead underwriters of a public offering

of WICAT common stock as representatives of a defendant underwriter class were named as defendants. The complaint set forth five causes of action based upon §§ 11 and 12(2) of the Securities Act of 1933, § 10(b) (and Rule 10b–5) of the Securities Exchange Act of 1933, common law fraud and deceit, and common law negligent misrepresentation.

2. February 10, 1984: An order was entered consolidating into the present action lawsuits filed by plaintiffs Bruce Youngman; Lee and Edith Woods; Guillermo Astudillo; Lawrence Epstein; Nessim Husni; and William B. Weinberger. The law firm of Abbey & Ellis was designated as "Chairmen of Plaintiffs' Executive Committee" and ordered to delegate, monitor and coordinate all work responsibilities to avoid duplication.

3. February 29, 1984: A meeting of plaintiffs' counsel was held at which time the law firms representing plaintiffs were assigned the following responsibilities:

*Abbey & Ellis* ("Abbey") (New York): to act as lead counsel by monitoring work assignments as well as participating in all aspects of the case.

*Barrack, Rodos & Bacine* ("Barrack") (Philadelphia): to be responsible for discovery of third parties.

*Fabian & Clendenin* ("Fabian") (Salt Lake City): to act as liaison counsel in the United States District Court for the District of Utah and enter into necessary stipulations or other agreements with WICAT's counsel in Utah.

*Harvey Greenfield* ("Greenfield") (New York): to be responsible for the discovery of the underwriters.

*Goodkind, Wechsler, Labaton & Rudoff* ("Goodkind") (New York): to be responsible for the discovery of the underwriters and preparation of discovery requests.

*Kaufman, Malchman & Kinley* ("Kaufman") (New York): to be responsible for the discovery of the WICAT Educational Institute and the individual defendants.

*Milberg, Weiss, Bershad, Specthrie & Lerach* ("Milberg") (San Diego): to be responsible for discovery of WICAT.

*Pomerantz, Levy, Haudek, Block & Grossman* ("Pomerantz") (New York): to be responsible for discovery of the underwriters and preparation of the amended complaint.

*Wolf, Popper, Ross, Wolf & Jones* ("Wolf") (New York): to be responsible for preparation of the class action certification and the discovery of WICAT.

4. March 12, 1984: A consolidated complaint was filed alleging the same essential counts as contained in the *Greco* complaint with the addition of a count under § 61–1–22(2) of the Utah Uniform Securities Act as well as the naming of four additional parties. The complaint alleges material misrepresentations and omissions in connection with the Registration Statement and Prospectus of a public offering of 4,000,000 shares of WICAT common stock at $18 per share. One critical alleged misrepresentation was a statement that WICAT "expects profits during the remainder of Fiscal 1984."

5. March 26, 1984: The law firm of David B. Gold, a professional corporation ("Gold", San Francisco) joined in the consolidated complaint on behalf of plaintiff Thomas Quinn. The law firm of Armstrong, Rawlings, West & Brown ("Armstrong") was retained by Gold as local counsel.

6. April 2, 1984: Interrogatories and requests for production of documents were served by plaintiffs on WICAT.

7. April 29, 1984: Interrogatories and requests for production of documents were served by plaintiffs on the defendant underwriters.

8. November 6, 1984: Plaintiffs filed a memorandum in opposition to a motion by defendants for protective order.

9. November 27, 1984: Plaintiffs filed an untimely but accepted memorandum in opposition to a motion by defendants to dismiss the § 12(2) count of the complaint.

10. November 29, 1984: Oral argument was heard regarding the motion to dismiss

and the matter was taken under advisement by the court.

11. December 3, 1984: A Memorandum Decision and Order of the United States Magistrate was issued in response to defendants motion for protective order. The motion was granted and accordingly it was ordered that no discovery on the merits would be permitted until the issue of class certification was decided.

12. December 11, 1984: Plaintiffs filed a motion for class certification and supporting memorandum.

13. December 20, 1984: Memorandum Decision and Order was issued by the Honorable David K. Winder ruling that the § 12(2) count be dismissed with prejudice unless the plaintiff amend to allege facts akin to agency rather than an arms-length "firm commitment" underwriting between WICAT and the underwriters. *In re WICAT Securities Litigation*, 600 F.Supp. 1236 (D.Utah 1984).

14. January 14, 1985—January 16, 1985: Plaintiffs filed a joint objection to interrogatories of defendants as well as responses by each individual plaintiff to those interrogatories.

15. May 16, 1985: The instant case was reassigned to this judge.

16. June 28, 1985: A status conference was held and attended by local counsel on plaintiffs' behalf.

17. July 16, 1985: A stipulation and order was executed allowing discovery on the merits of the case to proceed pursuant to an agreed upon schedule thereby modifying the Magistrate's prior order.

18. October 1985—April 1986: Plaintiffs took the following depositions: Robert W. Mendenhall, Dustin H. Heuston, Thomas A. Duerden, Paul Wainock and Frank M. Richardson (officers or directors of WICAT); Timothy E. Howard, John R. Cullinane and Dominic Sebastian Solly (representatives of the lead underwriters); Charles E. Johnson (partner of WICAT's independent auditor); and Mark Nelson (WICAT's Sales Administration Manager).

19. April 1986—October 1986: During this period no apparent formal discovery was conducted but meetings of counsel and settlement discussions were held. Various stipulations of continuances were filed with the court.

20. October 2, 1986: A report was held before the court at which time counsel outlined the proposed procedure for notification of class action parties.

21. October 6, 1986: A stipulation of settlement was filed. The settlement document sets forth that WICAT will place $6,250,000 in an account earning interest of 7% from April 1, 1986 through June 25, 1986 and thereafter interest is to be earned at the prevailing rates of an agreed escrow agent. The parties requested that a hearing be held to certify the plaintiff and defendant classes for purposes of settlement and that the court hear argument on whether the settlement is fair, reasonable and adequate and on the issue of attorney's fees. The stipulation also provides that plaintiffs' counsel will not seek fees in excess of $1,000,000, plus the reimbursement of expenses to the date of hearing, together with interest on such requested fees, and the defendants agreed that they will not challenge an application by plaintiffs' counsel for fees which do not exceed $1,000,000.[1]

---

1. This provision is known as a "free sailing clause." Such clauses have been criticized as illegitimate devices which accentuate the conflict of interest between a plaintiff class and the plaintiffs' counsel in negotiating settlements. *See Malchman v. Davis*, 761 F.2d 893, 906–908 (2nd Cir.1985) (Newman, J., concurring). The first problem with such a clause is that it deprives the court of the adversary process because the defendant has agreed not to object to the demands of plaintiffs' counsel. In a common fund case, even without a free sailing clause, a defendant may not have incentive to act as an adversary to limit the proportion of the fund awarded to counsel because once the fund is created the defendants' exposure is the same no matter the award. However, without such a clause at least the defendant is a neutral party whose input can be used by the court. The second significant problem with such a clause is that it encourages plaintiffs' counsel to bargain away benefits to the class in trade for hefty fees.

22. December 29, 1986: Plaintiffs filed an extensive memorandum and affidavit in support of settlement as well as a joint petition for an award of attorneys' fees and reimbursement of expenses. Totals for all the plaintiffs' lawyers based solely on time computations is $711,037.74 in fees and $81,300.37 in expenses.[2] Plaintiffs' counsel request a total fee of approximately $1 million, to be arrived at through a lodestar multiplier of 1.5 if the lodestar method is used, or a flat 16% award if the percentage of recovery method is used.

23. January 9, 1987: A settlement hearing was held after which the court took the matters under advisement.

24. February 4, 1987: Findings of Fact and Conclusions of Law were entered by the court certifying the plaintiff and defendant classes for purposes of settlement and approving the settlement as fair, just and adequate.

25. March 13, 1987: The court issued an order requesting additional information on the application for attorneys fees. Included in the order was a request for schedules relating to each court appearance, deposition, meeting of counsel, or settlement meeting with a disclosure of the lawyers present, their billing rate and other relevant information. Documents filed with the court likewise were broken down individually to include the name and billing rate of the lawyer who worked on the document. Other relevant information also was requested.

26. May 8, 1987—counsel for plaintiffs filed a voluminous document in response to the court's order. Thereafter, additional information was requested by the court and submitted by counsel.

Based upon the documentation submitted and other data and information available, the court determines no further hearing as to these matters to be necessary.

## LEGAL ANALYSIS

■ The general or so-called "American Rule" is that litigants should bear the cost of their own attorneys fees, so that ordinarily even successful litigants do not recover attorney fees. A recognized exception to the American Rule is to award attorney fees to those who represent a plaintiff class in creating a common fund which benefits the class. *Boeing Co. v. VanGemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980); *see also Trustees v. Greenough*, 105 U.S. (15 Otto) 527, 26 L.Ed. 1157 (1882). The stated rationale for the exception is that the plaintiff has conferred a benefit upon the class and therefore may recover legal expenses from the beneficiaries of the fund.[3] Here, plaintiffs have created a fund of $6,250,000 for the benefit of the class.

### I. *Method of Computation*

■ Plaintiffs' counsel seeks to have this court determine that the appropriate method for computing fees in a common fund case is the percentage of recovery method. According to that method the court need not consider each lawyer's standard billing rate as multiplied by the number of hours spent on the litigation, but rather the court renders an award based upon success which itself is measured by the size of the fund. The court simply determines a reasonable percentage of the entire fund that ought to be awarded to the plaintiffs' attorneys. Counsel rely on a footnote in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) as authority for the proposition that percentage of recovery is the appropriate method in common fund cases. In *Blum* the court said:

> Unlike the calculation of attorney's fees under the "common fund" doctrine, *where a reasonable fee is based on a*

**2.** The totals are broken down by firm as follows:

| | Fees | Expenses |
|---|---|---|
| Armstrong Firm: | $ 1,400.00 | |
| Abbey Firm: | 260,898.75 | $56,675.19 |
| Barrack Firm: | 35,101.50 | 2,083.94 |
| Fabian Firm: | 14,195.75 | 2,754.03 |
| Gold Firm: | 14,044.25 | 3,376.30 |
| Goodkind Firm: | 53,274.50 | 1,046.26 |
| Greenfield: | 56,468.75 | 826.24 |
| Kaufman Firm: | 53,513.74 | 396.36 |
| Milberg Firm: | 32,862.75 | 6,021.14 |
| Pomerantz Firm: | 79,596.00 | 5,801.26 |
| Wolf Firm: | 109,681.75 | 2,319.65 |
| | $711,037.74 | $81,300.37 |

**3.** *See* 1 M. Derfuner & A. Wolf, *Court Awarded Attorney Fees* ¶ 2.01 at 2–3 (1985).

*percentage of the fund bestowed on the class,* a reasonable fee under § 1988 reflects the amount of attorney time reasonably expended on the litigation.

*Id.* 465 U.S. at 900 n. 16, 104 S.Ct. at 1550 n. 16 (emphasis added).[4] Courts reviewing footnote 16 have come away with varying perceptions. Some contend that the Court's statement is a clear endorsement of the percentage of recovery method as the preferable approach in common fund cases. *See Edmonds v. United States,* 658 F.Supp. 1126, 1144 (D.S.C.1987). Others view the footnote merely as stating the general proposition that percentage of recovery may bear no relationship to benefit of the class in statutory fee cases but may serve as a useful gauge in common fund cases. *See Rothfarb v. Hambrecht,* 649 F.Supp. 183, 185 n. 1 (N.D.Cal.1986); *Brewer v. Southern Union Co.,* 607 F.Supp. 1511, 1521 (D.Colo.1984).[5] However, from this court's research what does appear clear is that the cases which analyze footnote 16 of *Blum* nevertheless have considered both the percentage of recovery calculation and a lodestar calculation in ascertaining reasonable fees.[6] This court will look at both methods in its analysis of this case. In addition, this court agrees with the general consensus of those cases

that the appropriate *starting point* in calculating reasonable fees, even in common fund cases, is to arrive at a "lodestar" by multiplying the number of hours reasonably expended by a reasonable rate.[7]

## II. Lodestar Method

### A. Reasonable Rates

■ The Tenth Circuit in *Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir.1983) established that absent unusual circumstances the rates for attorney fees are based upon the norm in the community where the litigation takes place rather than prevailing rates where the attorney generally practices. However, some courts have acknowledged that prosecution and management of a "complex national class action" requires unique legal skills. *See Edmonds v. United States,* 658 F.Supp. 1126, 1137 (D.S.C.1987). Accordingly, the court in *Edmonds* considered the rates of the forum community but did not exclusively base its determination of reasonableness on such local rates. This court considers that the forum community in this case does include lawyers qualified to handle class action litigation of the magnitude and complexity involved here. However, this court will not exclusively consider such local rates in establishing reasonableness.

---

4. Counsel also rely on a recommendation by the Third Circuit Task Force, *Court Awarded Attorney Fees,* 108 F.R.D. 237 (October 8, 1985) that percentage of recovery is the appropriate method for calculating reasonable fees in common fund cases. However, the recommendation of the task force was that at the "earliest practicable moment" the court appoint a non-judicial representative for the putative fund beneficiaries who would negotiate with plaintiffs' counsel regarding the appropriate percentage, usually along a sliding scale, depending on the ultimate recovery. Although the recommendation of the Task Force deserves consideration it is obviously not a viable alternative at this stage of the litigation.

5. *See also* 2 M. Derfner & A. Wolf, *Court Awarded Fees* ¶ 15.04 at 15–12.1 (1985) wherein the authors state:

Although [footnote 16 of *Blum* ] appears simply to be a misconstruction of current fee law rather than a considered dismissal of the *Lindy* [lodestar] methodology for common fee cases, at least one court of appeals has allowed a percentage recovery to stand on this footnote.

The authors maintain that the Supreme Court's statement was a misconstruction of current fee law because since the early 1970s courts have universally rejected percentage fees in common fund cases.

6. *See Edmonds,* 658 F.Supp. at 1146–51; *Rothfarb,* 649 F.Supp. at 189–200; *Greene v. Emersons Ltd.,* Fed.Sec.L.Rep. (CCH) ¶ 93,263 (S.D.N.Y. May 20, 1987); *Fickinger v. C.I. Planning Corp.,* 646 F.Supp. 622 (E.D.Pa.1986); *Efros v. Dickhoner,* No. C–1–81–1310, slip op. (S.D.Ohio April 21, 1986) [Available on WESTLAW, DCT database]; *Brewer,* 607 F.Supp. at 1522–37.

7. *See Greene,* Fed.Sec.L.Rep. (CCH) ¶ 93,263; *Edmonds,* 658 F.Supp. at 1144 n. 39; *Fickinger,* No. 81–0951; *Rothfarb,* 649 F.Supp. at 185; *Brewer,* 607 F.Supp. at 1520 wherein the courts cite the Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983):

The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.

Rather, this court looks essentially to four sources: (1) requested rates as set forth in the submissions of counsel, recognizing that the firms are based in the communities of New York, San Francisco, San Diego and Philadelphia; and (2) the rates established in other jurisdictions in similar litigation, especially cases wherein the court considered "national rates," and published and unpublished opinions involving the precise lawyers and firms involved here; and (3) the standard rates established in the Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,* 108 F.R.D. 237, 260 (October 8, 1985); and (4) the court's experience in practicing for thirty years in the community of the forum and nationally.

### 1. *Requested Rates*

First, focusing on the requested rates this court has broken down the submissions into five categories based upon the lawyer's experience. The results are: (1) lawyers with more than twenty-five years of experience have requested rates ranging from $100 to $325 per hour; (2) lawyers with sixteen to twenty-five years experience have requested rates ranging from $200 to $275 per hour; (3) lawyers with eleven to fifteen years experience have requested rates ranging from $100 to $225 per hour; (4) lawyers with six to ten years experience have requested rates ranging from $90 to $200 per hour; and (5) lawyers with five or less years of experience have requested rates ranging from $60 to $145 per hour.[8]

### 2. *National Rates and Awards to Counsel*

Next, looking at case authority, the recent opinion in *In re "Agent Orange"*

---

**8.** The ranges of rates requested within each firm and the rates of the individual attorneys therein are as follows:

1. Over 25 years experience:

| | range | individual rate |
| --- | --- | --- |
| Abbey Firm: | $285 | |
| Ralph L. Ellis | | $285 |
| Arthur N. Abbey | | $285 |
| Armstrong Firm (Local Counsel): | $100 | |
| David E. West | | $100 |
| Gold Firm: | $290 | |
| David B. Gold | | $290 |
| Goodkind Firm: | $275 | |
| Edward Labaton | | $275 |
| Stuart D. Wechsler | | $275 |
| Greenfield: | $325 | |
| Harvey Greenfield | | $325 |
| Kaufman Firm: | $250–275 | |
| Stanley L. Kaufman | | $275 |
| Irving Malchman | | $250 |
| Milberg Firm: | $325 | |
| Melvyn I. Weiss | | $325 |
| Wolf Firm: | $260–285 | |
| Benedict Wolf | | $285 |
| Stanley Nemser | | $285 |
| I. Stephen Rabin | | $260 |

2. 16–25 years experience:

| | range | individual rate |
| --- | --- | --- |
| Barrack Firm: | $200–225 | |
| Leonard Barrack | | $225 |
| Gerald J. Rodos | | $200 |
| Goodkind Firm: | $200 | |
| Joseph Sternberg | | $200 |
| Milberg Firm: | $240–275 | |
| David S. Bershad | | $275 |
| William S. Lerach | | $275 |
| Jerome M. Congress | | $240 |
| Pomerantz Firm: | $235 | |
| Stanley M. Grossman | | $235 |

| | range | individual rate |
| --- | --- | --- |
| Wolf Firm: | $225 | |
| Michael P. Fuchs | | $225 |
| John Mage | | $225 |

3. 11–15 years experience:

| | range | individual rate |
| --- | --- | --- |
| Abbey Firm: | $210 | |
| Stephen T. Rodd | | $210 |
| Fabian Firm (Local Counsel): | $100–125 | |
| Peter W. Billings, Jr. | | $125 |
| Rand M. Elison | | $100 |
| Gold Firm: | $190–205 | |
| Paul F. Bennett | | $205 |
| George Donaldson | | $190 |
| Goodkind Firm: | $150–210 | |
| Robert S. Schachter | | $210 |
| Lawrence A. Sucharow | | $200 |
| Joseph H. Weiss | | $150 |
| Kaufman Firm: | $225 | |
| Roger W. Kirby | | $225 |
| Milberg Firm: | $195 | |
| John Grasberger | | $195 |
| Sharon L. Mirsky | | $195 |
| Pomerantz Firm: | $160-180 | |
| Stephen P. Hoffman | | $180 |
| Joseph J. Tabacco, Jr. | | $160 |
| Wolf Firm: | $190–225 | |
| Klari Neuwelt | | $225 |
| Ellen P. Chapnick | | $190 |

4. 6–10 years experience:

| | range | individual rate |
| --- | --- | --- |
| Abbey Firm: | $160 | |
| Jill S. Abrams | | $160 |
| Barrack Firm: | $145 | |
| John G. Narkin | | $145 |
| John F. Innelli | | $145 |
| Fabian Firm (Local Counsel): | $90–95 | |
| Gary E. Jubber | | $95 |
| Terrie T. McIntosh | | $95 |
| Kevin N. Anderson | | $90 |
| Jathon W. Janove | | $90 |

*Product Liability Litigation,* 818 F.2d 226 (2nd Cir.1987) is instructive. In that case the court affirmed hourly rates set by the district court of $150 for the work of partners, $100 for the work of associates, and $125 for the work of a law professor. That case involved a large class action and included eighty-eight attorneys. In arriving at the above rates the district court relied on the *National Journal Directory of the Legal Profession* (B. Gerson, M. Liss & P. Cunningham eds. 1984), the submissions of counsel, various surveys of law firm economics dated 1980 through 1984, the court's own experience in setting fees in class actions and awards by other courts. The court in relying on the above information concluded that the rates it selected were "national hourly rates."

This court also takes notice of several cases involving counsel who seek fees in this case. The most recent opinion is *Cardiology Associates v. National Intergroup, Inc.,* No. 85 Civ. 3048 slip op. (S.D. N.Y. Feb. 13, 1987) [Available on WEST-LAW, DCT database]. In that case the court reduced the requested rates of the Goodkind firm to $175 per hour for a principal junior partner and to $200 per hour for senior partners, and accepted requested rates of $110 per hour for associates and $40 per hour for paralegals. In making those reductions the court relied on the fee rates set in the *Agent Orange* litigation. In *Evangelist v. Fidelity Management & Research Co.,* No. 81–536–2, 82–912–2, slip op. (D.Mass. Aug. 19, 1986) [Available on WESTLAW, DCT database], the court reduced fee applications of the Milberg firm to $230 per hour for partners and $120 per hour for associates.[9] In *Skelton v. General Motors Corp.,* 661 F.Supp. 1368, 1385 (N.D.Ill.1987) the court approved the following hourly rates: $220 for Stuart D. Wechsler; $220 for Edward Labaton; $160 for Robert Schachter; and $150 for Lawrence Sucharow. The court in *Skelton* reduced as duplicative 10% of all of the hours spent by the Goodkind firm. In *Rothfarb v. Hambrecht,* 649 F.Supp. 183 (N.D.Cal.1986) the court approved the following hourly rates: David B. Gold ranging from $200–285; Paul F. Bennett ranging from $125–200; Richard F. Rogoff ranging from $75–150; George Donaldson $130; Melvyn I. Weiss ranging from $250–295; David J. Bershad ranging from $185–245; William S. Lerach ranging from $185–245; John E. Grasberger ranging from $105–180; Anita Meley Laing ranging from $85–95; and Steven W. Pepich $65. However, in awarding such high hourly rates it was noted:

> Fee Applicants' current billing rates are substantially in excess of those billed by securities litigation lawyers of equal stature and skill in San Francisco—at least in the defendant bar. Moreover, they are greatly in excess of those reported in two recent extensively litigated cases in which the respective courts were called upon to fix plaintiffs' attorneys' fees in the Southern District of California (San Diego), and the Southern District of New York. Nevertheless, the Special Master feels constrained by the recent allowance to the Gold firm in this district of $270 an hour for senior partners' time, $185–$165 for other partners' time, $145–$140 for senior associates' time, and $95–$75 for junior associates' time.

| | range | individual rate |
|---|---|---|
| Gold Firm: | $150 | |
| Richard A. Rogoff | | $150 |
| Kaufman Firm: | $200 | |
| Lewis S. Sandler | | $200 |
| Milberg Firm: | $140 | |
| Anita M. Laing | | $140 |
| Pomerantz Firm: | $160 | |
| Marc I. Gross | | $160 |
| 5. 5 years or less of experience: | | |
| Abbey Firm: | $125 | |
| Mark C. Gardy | | $125 |
| Barrack Firm: | $85–145 | |
| Edward M. Gergosian | | $145 |

| | range | individual rate |
|---|---|---|
| Kirk B. Hulett | | $130 |
| Barbara A. Gold | | $85 |
| Fabian Firm (Local Counsel): | $60 | |
| Jeffrey C. Zimmerman | | $60 |
| Kaufman Firm: | $95–125 | |
| Catherine E. Welker | | $95 |
| Elizabeth M. Toll | | $125 |
| Milberg Firm: | $95 | |
| Steven W. Pepich | | $95 |
| Pomerantz Firm: | $100–110 | |
| Shaheen Rushd | | $110 |
| Laurence D. Paskowitz | | $100 |

9. The requested rate for partner time was $260 per hour.

*Id.* at 195–96. It should also be pointed out that in *Rothfarb* there were very substantial reductions in the hours submitted based upon a determination that the hours were unreasonable. In *Anderson v. Boothe,* No. 85–0025, slip op. (E.D.Pa. June 13, 1986) [Available on WESTLAW, DCT database] the court approved an hourly rate of $193.24 for Leonard Barrack. In the case of *In re Cincinnati Gas & Electric Co. Securities Litigation,* 643 F.Supp. 148 (S.D.Ohio 1986) the court approved hourly rates of $275 for Arthur N. Abbey and Ralph L. Ellis and $140 for Jill Abrams.

### 3. *Third Circuit Task Force*

This court also takes note of the rates set forth in the Third Circuit Task Force's standardized fee schedule. 108 F.R.D. 237, 260 (1985). Those rates are as follows: (1) supervising attorneys, project heads and managing attorneys: $130–$200; (2) attorneys with more than 10 years experience: $125–$180; (3) attorneys with 6–10 years experience: $100–$160; (4) attorneys with 2–5 years experience: $80–$120; (5) attorneys with post law school experience under two years: $60–$85; (6) senior paralegals: $40–$60; (7) law students: $30–$50; and (8) other paralegals: $30–$40.

### 4. *Experience*

The court finds it appropriate to set hourly rates in this case on a scale measured by the number of years of experience of counsel in handling complex class action securities cases and other complex litigation. Based upon the factors above discussed and this court's experience as a practitioner relating to rates of charge in complex cases, the following hourly rates are found to be reasonable within such experience categories: (1) $175 for attorneys with over 25 years experience; (2)

$150 for attorneys with 16–25 years experience; (3) $110 for attorneys with 11–15 years experience; (4) $95 for attorneys with 6–10 years experience; (5) $80 for attorneys with five or less years experience; and (6) $40 for paralegals.[10]

### B. *Reasonable Hours*

After careful review of the fee applications and the requested supplemental submissions, this court is of the opinion that the fee requests contain a great deal of duplication and generally excessive hours. The Tenth Circuit has directed that plaintiffs' counsel, and ultimately the court, distinguish "raw" time from "hard" or "billable" time in calculating reasonable fees. *Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir.1983). Accordingly, this court must reduce the submitted hours to include only those found by the court to have been reasonably expended for the benefit of the class.

### 1. *Complaints*

■ Seven separate lawsuits were originally filed by nine plaintiffs on behalf of the class. After a consolidation order was entered a consolidated complaint was filed. Counsel have expended approximately 356 hours in drafting and reviewing all of the above complaints plus the *Quinn* complaint which was filed after consolidation. A considerable portion of that time was spent in review of the various complaints. It is not altogether clear whether in drafting the later complaints counsel had the benefit of the earlier complaints. However, that seems reasonable given the number of hours spent in reviewing complaints filed on behalf of plaintiffs other than the attorneys' client.[11] In any event the hours spent on each complaint are excessive. Accordingly, the hours spent in drafting or reviewing each of the original complaints have been reduced by 25%. The hours

---

**10.** The submissions of counsel have been inadequate in outlining the experience of various counsel. Through use of the *Martindale Hubbell Law Directory* (1986) this court has been able to supplement the fee submissions. However, no information was available to this court with regard to Lewis S. Sandler, Elizabeth M. Toll, or Steven W. Pepich. The court has attempted to place these lawyers in the appropri-

ate category by comparing their hourly rates with that of other members of the same firm, erring on the conservative side.

**11.** Clearly some of that time was spent for the purpose of drafting the consolidated complaint. Still it seems reasonable to assume that there was cooperation among plaintiffs' counsel from the beginning or at least knowledge of other

spent on the consolidated complaint are reduced by 50% due to the efficiency factor that should have been manifest in drafting that complaint.[12]

### 2. *Meetings of Counsel*

■ counsel have billed considerable hours in meetings among themselves. These meetings have been characterized as related to strategy, settlement or discovery. However, the documentation in support of those meetings leaves much to be desired. It is the exception rather than the rule that a meeting attended by two counsel is recorded by both. The implication is that a particular telephone conference or other meeting was not so significant or of such benefit to the class that it was recorded by both counsel. Some courts would completely exclude all such time. *See Rothfarb v. Hambrecht*, 649 F.Supp. 183, 190, 194–95 (N.D.Ca.1986). This court has determined that such meetings should be discounted by 50%.[13]

### 3. *Hearings*

Counsel have submitted application for time spent attending hearings at which

counsel did not participate. Because such time was of limited benefit to the class this court has reduced the time and accompanying expenses by 50%.[14]

### 4. *Depositions*

With regard to depositions there is considerable duplication in the form of excessive "preparation" as well as attendance by more attorneys than necessary at each deposition. The court has thus granted 100% of the time for the lawyer conducting each deposition, 50% of the time for lawyers assisting, and 25% for all others present. The court has also reduced by 25% the time spent in preparation for depositions by all counsel. That figure is generous given the amount of preparation and the fact that there is no showing how such preparation benefited the class, especially with regard to lawyers who did not participate in the deposition.[15]

### 5. *"Review"*

■ The word "review" seems to be a catchall category with great versatility in counsels' application. It is also a signal for

---

lawsuits for which the complaint would be public record.

**12.** The following schedule outlines the total reductions from each attorney's time:

| | | |
|---|---|---|
| Abbey Firm: | Abbey | 3.38 |
| | Ellis | 1.70 |
| | Rodd | .70 |
| | Abrams | 2.63 |
| Barrack Firm: | Barrack | 2.25 |
| | Rodos | 4.32 |
| Fabian Firm: | Billings | .56 |
| | Elison | 1.20 |
| | Jubber | 1.88 |
| | Anderson | 2.91 |
| Gold Firm: | Bennett | .38 |
| | Rogoff | 3.63 |
| Goodkind Firm: | Labaton | 1.50 |
| | Wechsler | 3.46 |
| | Schachter | 1.48 |
| | Sucharow | 1.58 |
| | Weiss | 8.45 |
| Greenfield: | Greenfield | 9.82 |
| Kaufman Firm: | Malchman | 2.25 |
| | Kirby | 10.75 |
| Milberg Firm: | Lerach | .50 |
| | Grasberger | 6.64 |
| | Laing | 1.01 |
| | Pepich | .13 |
| Pomerantz Firm: | Grossman | 4.36 |
| | Gross | 23.50 |
| | Tabacco | .25 |
| | Paskowitz | .90 |
| Wolf Firm: | Rabin | 7.15 |

**13.** The following schedule outlines the total reductions from each attorney's time:

| | | |
|---|---|---|
| Abbey Firm: | Abbey | 4.51 |
| | Ellis | 3.75 |
| | Abrams | 3.14 |
| Fabian Firm: | Billings | .75 |
| | Jubber | .76 |
| | Anderson | 8.69 |
| | Janove | .15 |
| Gold Firm: | Gold | 1.52 |
| | Bennett | 3.00 |
| | Rogoff | .50 |
| Goodkind Firm: | Schachter | .20 |
| Greenfield: | Greenfield | 8.17 |
| Milberg Firm: | Grasberger | 2.18 |
| Pomerantz Firm: | Grossman | 2.45 |
| | Hoffman | .13 |
| | Gross | 1.10 |
| | Tabacco | 2.20 |
| | Rushd | .25 |

**14.** The following schedule outlines the total reductions from each attorney's time:

Abbey Firm: Abrams .88 plus $613.15 (expenses)
Milberg Firm: Grasberger 3.25

**15.** The following schedule outlines the total reductions from each attorney's time:

| | | |
|---|---|---|
| Abbey Firm: | Ellis | 9.38 |
| | Abrams | 73.88 |
| Greenfield: | Greenfield | 14.06 |

the padding of hours. For example a pretrial order which was drafted in just over 25 hours was reviewed by counsel for in excess of 43 hours. The court has reduced review of that document by 50%. Another example is that court notices of upcoming hearings were "reviewed" by counsel for up to one full hour. These submissions have been eliminated entirely.

There was considerable review by counsel who appears to have taken the laboring oar in this litigation on behalf of the Abbey firm which served as lead counsel. Much of that time is presumptively valid but it seems that some of the efficiency in delegating responsibility among plaintiffs' counsel was defeated by such overly extensive review.[16]

The stipulated settlement document is another example of excessive review. The document was drafted in approximately 28 hours but was reviewed for a total of approximately 149 hours. Recognizing the significance and the need for careful analysis of that document the court has been generous in reducing those hours by only 40%. The reductions established by the court in this category are set forth in footnote.[17]

### 6. Memorandum in Support of Settlement

Counsel have represented that 200 hours were spent creating the memorandum in support of settlement. That amount of time seems excessive to say the least in light of the document which this court has further reviewed for purposes of the fee application. Hours submitted in that regard are reduced by 50%.[18]

### 7. Interrogatories

In answering similar interrogatories plaintiffs' counsel spent time ranging from 4.25 hours to 21.18 hours. A maximum of 10 hours seems reasonable in the circumstances.[19]

### 8. Review of Depositions and Preparation of Deposition Memoranda

Two additional entries by counsel cause concern for lack of indication of benefit to

| | | |
|---|---|---|
| Kaufman Firm: | Kaufman | 9.50 |
| | Malchman | .63 |
| | Welker | 9.50 |
| | Toll | 1.46 |
| Pomerantz Firm: | Hoffman | .25 |
| | Gross | .18 |
| | Tabacco | 30.23 |
| Wolf Firm: | Rabin | 10.88 |
| | Fuchs | 8.31 |

**16.** Jill Abrams spent 12 hours reviewing a memorandum in opposition to defendant's motion for protective order when the document was drafted in just over 9 hours by counsel who was delegated the task. That is only one of many examples of what the court regards as excessive review, and accordingly her time has been reduced by an additional 35 hours.

**17.** The following schedule outlines the total reductions from each attorney's time:

| | | |
|---|---|---|
| Abbey Firm: | Abbey | 3.70 |
| | Ellis | 7.35 |
| | Rodd | .80 |
| | Abrams | 50.18 |
| Barrack Firm: | Barrack | 1.73 |
| | Rodos | .78 |
| Fabian Firm: | Billings | .13 |
| | Elison | .98 |
| | Jubber | .13 |
| | Anderson | 5.83 |
| Goodkind Firm: | Wechsler | 5.45 |
| | Schachter | 3.55 |
| | Sucharow | .25 |
| | Weiss | 13.10 |

| | | |
|---|---|---|
| Greenfield: | Greenfield | 3.88 |
| Milberg Firm: | Weiss | .20 |
| | Bershad | .80 |
| | Lerach | 4.10 |
| | Grasberger | 2.00 |
| | Mirsky | 2.08 |
| | Laing | .12 |
| Pomerantz Firm: | Gross | 3.85 |
| | Grossman | 5.05 |
| | Tabacco | 4.84 |
| Wolf Firm: | Rabin | 2.27 |
| | Fuchs | 10.92 |

**18.** The following schedule outlines the total reductions from each attorney's time:

| | | |
|---|---|---|
| Abbey Firm: | Abbey | 2.50 |
| | Ellis | 5.88 |
| | Abrams | 20.63 |
| Greenfield: | Greenfield | .75 |
| Wolf Firm: | Rabin | 70.50 |

**19.** The following schedule outlines the total reductions for each lawyer for time spent over ten hours:

| | | |
|---|---|---|
| Abbey Firm: | Ellis | .11 |
| | Rodd | .23 |
| | Abrams | 4.59 |
| | Gardy | 2.99 |
| Fabian Firm: | Anderson | .58 |
| Goodkind Firm: | Schachter | 1.07 |
| | Sternberg | 3.10 |
| Greenfield: | Greenfield | 1.08 |
| Pomerantz Firm: | Gross | .92 |
| Wolf Firm: | Rabin | 3.43 |
| | Chapnick | 7.75 |

the class. One describes over 95 hours relating to—"analyzing, summarizing and preparing memoranda," relating to depositions. The other describes over 85 hours spent "reviewing" deposition testimony. The court has reduced the time spent by 20%.[20]

Based upon the above this court has determined that a reasonable lodestar is $366,856.60.[21]

## C. *Enhancement Factors*

■ According to the lodestar approach, once reasonable hourly rates for each of plaintiffs' counsel and the number of hours reasonable expended on the litigation have been ascertained this court must then determine whether a lodestar enhancement is appropriate. The factors taken into account by the various circuit courts in applying a lodestar multiplier have evolved and taken on different importance. However, the factors established in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) are frequently cited.[22] The

**20.** The following schedule outlines the total reductions from each attorney's time:

| Barrack Firm: | Barrack | .30 |
| | Gold | 19.10 |
| Goodkind Firm: | Sternberg | 17.16 |

**21.** The lodestar established by the court is broken down by firms as follows:

| | hours | rate | |
|---|---|---|---|
| **Abbey Firm:** | | | |
| Ralph L. Ellis | 230.90 × | $175 | $ 40,407.50 |
| Arthur N. Abbey | 206.16 × | $175 | 36,078.00 |
| Stephen T. Rodd | 11.77 × | $110 | 1,294.70 |
| Jill S. Abrams | 569.32 × | $ 95 | 54,085.40 |
| Mark C. Gardy | 7.51 × | $ 80 | 600.80 |
| | | Total | $132,466.40 |
| **Armstrong Firm:** | | | |
| David E. West | 14.00 × | $100 | $ 1,400.00 |
| **Barrack Firm:** | | | |
| Leonard Barrack | 30.97 × | $150 | $ 4,645.50 |
| Gerald J. Rodos | 65.25 × | $150 | 9,022.50 |
| John G. Narkin | 6.20 × | $ 95 | 589.00 |
| John F. Innelli | 7.75 × | $ 95 | 688.75 |
| Edward M. Gergosian | 1.50 × | $ 80 | 120.00 |
| Kirk B. Hulett | 29.50 × | $ 80 | 2,360.00 |
| Barbara A. Gold | 76.40 × | $ 80 | 6,112.00 |
| Paralegal | 17.25 × | $ 40 | 690.00 |
| | | Total | $ 24,227.75 |
| **Fabian Firm:** | | | |
| Peter W. Billings, Jr. | 4.81 × | $110 | $ 529.10 |
| Rand M. Elison | 30.92 × | $100 | 3,092.00 |
| Gary E. Jubber | 7.23 × | $ 95 | 686.85 |
| Terrie T. McIntosh | .30 × | $ 95 | 28.50 |
| Kevin N. Anderson | 79.84 × | $ 90 | 7,185.00 |
| Jathan W. Janove | 3.25 × | $ 90 | 292.50 |
| Jeffrey C. Zimmerman | .35 × | $ 60 | 21.00 |
| Paralegal | 8.90 × | $ 40 | 356.00 |
| | | Total | $ 12,191.55 |
| **Gold Firm:** | | | |
| David B. Gold | 6.43 × | $175 | $ 1,125.25 |
| Paul F. Bennett | 16.37 × | $110 | 1,800.70 |
| George Donaldson | 11.50 × | $110 | 1,265.00 |
| Richard A. Rogoff | 31.87 × | $ 95 | 3,027.65 |
| | | Total | $ 7,218.60 |
| **Goodkind Firm:** | | | |
| Edward Labaton | 7.00 × | $175 | $ 1,225.00 |
| Stuart D. Wechsler | 24.49 × | $175 | 4,285.75 |
| Robert S. Schachter | 42.10 × | $110 | 4,631.00 |
| Joseph Sternberg | 87.64 × | $150 | 13,146.00 |
| Lawrence A. Sucharow | — | | — |
| *Joseph H. Weiss | 40.25 × | $110 | 4,427.50 |
| Paralegal and law clerk | 8.10 × | $ 40 | 324.00 |
| | | Total | $ 28,039.25 |

| | hours | rate | |
|---|---|---|---|
| **Greenfield:** | | | |
| Harvey Greenfield | 135.99 × | $175 | $ 23,798.25 |
| **Kaufman Firm:** | | | |
| Stanley L. Kaufman | 17.00 × | $175 | $ 2,975.00 |
| Irving Malchman | 36.87 × | $175 | 6,452.25 |
| Roger W. Kirby | 123.25 × | $110 | 13,557.50 |
| Catherine E. Welker | 10.25 × | $ 80 | 820.00 |
| Lewis S. Sandler | 17.67 × | $ 95 | 1,678.65 |
| Elizabeth M. Toll | 4.37 × | $ 80 | 349.60 |
| | | Total | $ 25,833.00 |
| **Milberg Firm:** | | | |
| Melvyn I. Weiss | .30 × | $175 | $ 52.50 |
| David S. Bershad | 2.30 × | $150 | 345.00 |
| William S. Lerach | 8.00 × | $150 | 1,200.00 |
| Jerome M. Congress | .50 × | $150 | 75.00 |
| John Grasberger | 113.48 × | $110 | 12,482.80 |
| Sharon L. Mirsky | 6.12 × | $110 | 673.20 |
| Anita M. Laing | 9.97 × | $ 95 | 947.15 |
| Steven W. Pepich | 2.37 × | $ 80 | 189.60 |
| Paralegal | 23.80 × | $ 40 | 952.00 |
| | | Total | $ 16,917.25 |
| **Pomerantz Firm:** | | | |
| Stanley M. Grossman | 94.54 × | $150 | $ 14,181.00 |
| Stephen P. Hoffman | 3.27 × | $110 | 359.70 |
| Marc I. Gross | 67.95 × | $ 95 | 6,455.25 |
| Joseph J. Tabacco, Jr. | 119.48 × | $110 | 21,942.80 |
| Shaheen Rushd | .75 × | $ 80 | 20.00 |
| Laurence D. Paskowitz | 2.70 × | $ 80 | 216.00 |
| | | Total | $ 43,174.75 |
| **Wolf Firm:** | | | |
| Benedict Wolf | .55 × | $175 | $ 96.25 |
| I. Stephen Rabin | 198.94 × | $175 | 34,814.50 |
| Stanley Nemser | 1.73 × | $175 | 302.75 |
| Michael P. Fuchs | 29.53 × | $150 | 4,429.50 |
| John Mage | 1.30 × | $150 | 195.00 |
| Klari Neuwelt | .33 × | $110 | 36.30 |
| Ellen P. Chapnick | 105.25 × | $110 | 11,577.50 |
| Paralegal | 3.47 × | $ 40 | 138.00 |
| | | Total | $ 51,589.80 |
| | Total Adjusted Lodestar | | $366,856.60 |

* The total for Joseph H. Weiss includes hours before and after his departure from the Goodkind firm.

The total lodestar requested broken down by firm is set forth in footnote 2, *supra.*

**22.** Those twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time

Tenth Circuit in *Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983) considered the *Johnson* factors in the context of a civil rights case where fees were sought pursuant to statute and determined that most of those factors would be embraced within the following factors: (1) enhancement when the performance of counsel approaches genius; (2) enhancement when the case accepted is particularly undesirable to the extent that a stigma may attach to those associated with the case; and (3) enhancement for a contingency factor subject to several limitations. *Id.* at 557–58. The Supreme Court has further modified the consideration of enhancement factors. In *Blum v. Stenson*, 465 U.S. 886, 898–99, 104 S.Ct. 1541, 1548–49, 79 L.Ed.2d 891 the Court rejected novelty and complexity of the issues presented as appropriate enhancement factors. The Court reasoned that those factors are already reflected in the number of billable hours recorded by counsel. The court also rejected "quality of representation" as an enhancement factor except in the most unusual of cases. Normally such quality will be reflected in the attorney's hourly rate, so absent specific evidence that the attorneys' work was superior to that normally expected of a attorney with the same rate, no enhancement would be appropriate. The Supreme Court has recently affirmed its statements in *Blum* and has concluded:

> limitations imposed by the client in the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

23. Justice White joined by the Chief Justice, Justice Powell and Justice Scalia wrote an opinion in which they conclude that Congress intended to foreclose consideration of contingency in setting reasonable fees under fee-shifting provisions of the Clean Air Act, 42 U.S.C. § 7604(d) and the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988. According to Justice White's opinion, allowing enhancement for contingency compensates attorneys not only for their successful efforts in one case but also for their unsuccessful efforts in related cases which is contrary to the Congressional intent to award fees to only prevailing parties. Justice White also cited four other shortfalls based

In short, the lodestar figure includes most, if not all, of the relevant factors comprising a "reasonable" attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance.

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, — U.S. —, 106 S.Ct. 3088, 3098–99, 92 L.Ed.2d 439 (1986) (hereinafter *Delaware Valley Citizens I*).

The Supreme Court has also recently spoken on the issue of an enhancement factor based upon the contingency nature of a plaintiff lawyer's fee arrangement. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, — U.S. —, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (hereinafter *Delaware Valley Citizens II*) (the Court in its prior opinion did not reach the contingency issue but subsequently restored that aspect of the case to its docket resulting in the second opinion). The Court in *Delaware Valley Citizens II* refused to utilize the contingency factor, but that case may raise more questions than it answers, especially with regard to common fund cases that may be distinguishable from statutory fee shifting cases. In *Delaware Valley Citizens II* four justices determined that contingency *should not* be considered as an enhancement factor,[23] four justices

upon broader concepts unrelated to Congressional intent. He points out that courts historically have evaluated the contingency factor by attempting to evaluate the likelihood of success as it existed at the inception of litigation. The greater the risk that the plaintiff would not prevail the higher the contingency enhancement. However that results in plaintiff's counsel having a conflict with his or her client because counsel must explain to the judge the great weaknesses and inconsistencies of the plaintiff's case. The second problem is that judges must evaluate risk as it existed when the case was first filed, supposedly without the benefit of hindsight which is theoretically irrelevant. The third problem is that defendants with the strongest cases, those that make the risk of recovery greater for plaintiffs, will pay a higher fee. That concern would not apply to a common fund case where the recovery is not from the defendant but rather from the fund created for the class. The fourth problem is that because the contingency is neither certain nor

determined that it *should* be,[24] and one justice determined that it *might* be a factor depending on the particular case.[25]

Based upon the above caselaw, this court must determine whether plaintiffs' counsel are entitled to enhancement of the lodestar figures computed above. Counsel have asserted five considerations upon which such a "sweetening" factor should be based.

### 1. *Magnitude and Complexity of the Litigation*

The first factor relied upon by counsel is the "magnitude and complexity of the litigation." Counsel begin their argument with a recitation of the weaknesses of their case and the high degree of proof that would have been required had this case gone to trial. Counsel point out that to prove their case they could not rely on a "smoking gun" or "disgruntled insider" but instead were required to rely on circumstantial evidence that required great efforts to gather. Counsel also point out that this case involves both a plaintiff and defendant class. Finally, counsel point out that they "are recognized as among the most experienced class action litigators in the country...." This court is persuaded that none of the above considerations validates an enhancement to the lodestar. The Supreme Court's opinions in *Blum* and *Delaware Valley Citizens I* make it absolutely clear that long hours due to the difficulty of a case will be reflected in the reasonable hours expended. The Court's opinions also establish that counsel's expertise will be reflected in an appropriate hourly rate. Finally, five of the justices in *Delaware Citizens II* made it clear that the special risk of a particular case is not an appropriate consideration. The other four Justices would consider such risk in "exceptional cases." This case is not such an exceptional case in any event.

### 2. *Quality of Representation*

The second factor relied on by counsel is the quality of representation. In focusing upon their activities before the court plaintiff's counsel did not prevail on either of the two significant motions presented to the court: (1) the motion to dismiss the § 12(2) count; and (2) the motion to stay discovery on the merits. It would appear that if counsel exhibited the "genius" prerequisite to an enhancement under the Tenth Circuit's opinion in *Ramos*, that genius occurred outside the courtroom in settlement negotiations. This court is not convinced that such was the case. Although

accurate it is not an appropriate incentive for litigation.

**24.** In a dissent written by Justice Blackmun and joined by Justice Brennan, Justice Marshall and Justice Stevens it was emphasized that the concerns of Justice White disappear if the enhancement for contingencies are based upon the entire market, as promoted by Justice O'Connor, rather than the risks of a particular case. To the dissenters the contingency factor "is designed to place contingent employment *as a whole* on roughly the same economic footing as noncontingent practice, in order that such cases receive the equal representation intended by Congress." *Id.* 107 S.Ct. at 3097. According to the dissent that contingent factor is recouped in the private market by basing the fee on a percentage of damages recovered, but it may also be broken down into an hourly rate that the lawyer bills after the litigation succeeds. Therefore, based upon "the fact of contingency, not the likelihood of success in any particular case ..." courts such as this court could enhance the hourly rate. *Id.* at 3098. The dissent however would also grant the district court direction to further enhance as award for the particular risks in extraordinary cases. That proposition was a strong point of departure for Justice O'Connor. *Id.* at 3090.

**25.** Justice O'Connor in writing a concurring opinion which was not joined by any other Justice agreed with Justice White's criticism of the methodology in computing contingencies based upon the risks involved in *particular* cases. Justice O'Connor also joined in the judgment reversing the judgment of the Court of Appeals based upon a failure by the district court to make requisite findings. However, she disagreed that Congress did not intend that the contingent nature of a fee should never be a factor. According to her concurrence, a contingency factor may be considered "based on the difference in market treatment of contingent fee cases *as a class,* rather than on an assessment of the 'riskiness' of any particular case." *Id.* at 3089. However, to make such an award the district court must have evidence of the market and also must make a specific finding that without the enhancement the prevailing party "would have faced substantial difficulties in finding counsel in the local or other relevant market." *Id.* at 3091 (quoting Justice White).

settlement negotiations may have been long and difficult that is reflected in counsels' large request for such time. In addition, although counsel are unquestionably skilled negotiators, that skill is reflected in their hourly rates. Finally, although this court has held that the settlement is fair, just and adequate, the benefits to the class are not so extraordinary as to require enhancement based upon extraordinary success achieved through the genius of counsel. There is simply nothing in this case that demonstrates that counsel performed more brilliantly than could be expected based upon their hourly rates.

### 3. *Contingency*

The third factor relied on by counsel is the contingent nature of their fee arrangements. According to this court's counting of heads in *Delaware Valley Citizens II* three points can be extracted from the Supreme Court's opinion on that issue: (1) five Justices—O'Connor, Blackmun, Brennan, Marshall and Stevens would allow enhancement of hourly rates for the contingent nature of a fee arrangement in some cases; [26] (2) if we assume an enhancement is to be made and that the case is not exceptional, all Justices would agree that enhancement must be based upon prevailing market rates rather than upon the special risk of a particular lawsuit; [27] and (3) five Justices—O'Connor, White, The Chief Justice, Powell and Scalia—would require counsel to establish that without the enhancement plaintiffs would not have been able to retain counsel. Based upon those points, this court has determined that no contingency enhancement factor would be appropriate. In a proper case this court may conclude that application of the contingency factor would be appropriate at certain stages of the proceeding. In *Ramos v. Lamm*, 713 F.2d 546, 558 (10th Cir.1983) the court said:

Finally, the contingency factor should be assessed separately for the various stages of the litigation. Once a case has been won in the district court, the risk of nonrecovery diminishes greatly, even though there may be an appeal. In the instant case, recovery of some attorney's fees was certain after our appellate decision. A contingency bonus should not be given for hours expended in the district court after remand for work on the remedy or for time expended to establish the amount of the attorney's fee award.

The Tenth Circuit's recognition that different stages of litigation involve varying degrees of risk seems entirely consistent with the Supreme Court's direction in *Delaware Valley Citizens II* that the court should view contingency enhancement based upon the entire market rather than the specific risks of a particular case. Applying that analysis to the facts of this case, it is clear that plaintiff's counsel spent a great deal of their time *after* the case was settled. Ralph L. Ellis, as Chairman of the Plaintiffs' Executive Committee, filed an affidavit in support of the settlement in which he states:

The possibility of settlement was again raised and, in February 1985, counsel for the parties met for two days of discussion on this topic. As a result of these discussions, the broad outline of a settlement of the litigation was agreed upon; however, many of the details and issues encompassed by any settlement were not addressed but rather left for further discussion and negotiation. Plaintiffs' counsel present at these discussions emphasized, and defendants' counsel could not help but understand, that no settlement of the case could be reached without merits discovery.

The affidavit goes on to explain that because the Magistrate had precluded merits discovery the parties stipulated to further merits discovery with the express purpose

---

**26.** It should be noted that the views expressed were in the context of statutory fee-shifting to the losing party, not common fund fee-splitting among the prevailing plaintiffs.

**27.** The basis for the above conclusion is the criticism in the opinions by White and O'Connor of the specific risk method and the recognition by the dissent that enhancement should be based on the market and would be further enhanced in only the most exceptional of cases.

of reaching "a speedier resolution of the litigation." At that point plaintiffs' counsel engaged in merits discovery. However, under *Ramos* it is questionable whether a contingency factor for risk would be appropriate for any hours expended after February 1985 when the "broad outline" of settlement was agreed upon, thereby removing a great deal of the risk. *See Skelton v. General Motors,* 661 F.Supp. 1368, 1392 (N.D.Ill.1987) (refusing to apply a risk multiplier because the parties reached a settlement shortly after merits discovery was undertaken even though the case had been pending since 1982). In all events, this court has determined not to apply the enhancement factor based upon contingency in this case.

### 4. *Public Policy*

The fourth basis raised by counsel to enhance fees is public policy. It is true that there is an important public policy to vindicate securities fraud which requires that the cause be undertaken by counsel with requisite skill. This court is persuaded that the rates here approved are adequate for that purpose.

### 5. *Reaction by Class*

The fifth factor relied on by counsel is the lack of reaction by the class. Counsel argue that no class member has objected to the notification that counsel would seek an award of fees of 16% of the Fund ($1,000,-000). Although this court agrees that responses by the class would have been a relevant consideration it does not necessarily follow that the failure to respond is particularly meaningful. Class litigation is a process that seems strange to many class members and participation in that process would seem to be fairly intimidating. Accordingly, failure by the class to object to a 16% fee is not persuasive evidence that further enhancement is appropriate in this case.[28]

---

**28.** There was vociferous objection by a person whom the court determined had no standing to object.

### III. *Percentage of Recovery Analysis*

Plaintiffs' alleged that defendants sold 4 million shares of WICAT stock at $18 per share through a June 30, 1983 public offering. Over the next two and one-half months the stock dropped to $12 per share. Then on September 15, 1983 WICAT announced that it expected a "substantial" loss for the first full quarter after the June 30 offering. At that point WICAT stock dropped to $7 per share, amounting to approximately a $44 million loss in value to WICAT investors since the date of the offering. At the time the complaint was filed the stock further dropped to $4 per share, representing an additional $12 million loss in value. In their memorandum in support of the settlement, plaintiffs' counsel outline that despite the significant drop in value of WICAT stock the cause of such decline was extremely difficult to attribute to defendants. There was considerable evidence of an overall market decline. In addition, plaintiffs' counsel concede that all discovery tended to support rather than impeach defendants' explanation of the drop in value.

It is within that factual context that plaintiffs' counsel ask this court to award 16% of the fund ($1 million) in fees. As previously outlined, the actual lodestar value of the services by counsel total $366,-856.60 which amounts to approximately 6% of the fund created. Thus if this court were to award counsel an additional 10% of the fund that award would be based upon public policy considerations. In *In re Agent Orange Product Liability Litigation,* 818 F.2d 226, 236 (2nd Cir.1987) the court, in deciding not to award a risk multiplier to the lodestar, dealt with similar public policy considerations and stated:

> A court, therefore, in adjudging whether to award a risk multiplier, should examine closely the nature of the action in order to determine whether, as a matter of public policy, it is the type of case worthy of judicial encouragement. In our view, the case here clearly is not and,

consequently, we agree with the district court's decision not to impose a risk multiplier.

From the outset, the factual and legal difficulties hindering the successful prosecution of plaintiffs' case have been staggering. Factual evidence of causation has been at best tenuous and, if not for the last-minute settlement, the military contractor defense would have prevented class members from realizing any recovery at all. When these significant weaknesses in plaintiffs' case are viewed in light of the sheer magnitude of the action and the thousands of hours of court time that this type of action requires, it becomes clear that the federal courts should not actively encourage the bar to file such dubious actions in the future. This court is persuaded that this case likewise is one that ought not to be encouraged, at least not to the extent of a 10% additional bonus in attorney fees based upon a percentage of recovery. The issues of causation in this case were significant obstacles which should have been known by counsel from the very beginning. Counsel concede that investigation into the overall market and the problems of WICAT's competitors revealed the overall weakness of plaintiffs' case. Based upon all the facts and circumstances this court considers the lodestar calculation, equal to just less than 6% of the common fund, to be fair and adequate.

## IV. *Expenses*

The Tenth Circuit in *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir.1983) stated that items of expense normally itemized and billed in addition to an attorney's hourly rate may be awarded as fees. The stan-

dard of practice is evaluated within the area where the court sits. In *Ramos* the court upheld a district court's determination that expenses for photocopying, postage, telephone, books and overtime secretarial work were included within overhead and accordingly should not be billed separately.

■ This case involves the reimbursement of expenses expended on behalf of the plaintiff class rather than the taxing of costs to an opponent. However, it would be double counting to seek reimbursement from the class for expenses already incorporated within a plaintiff attorney's hourly rate. Accordingly, costs for computer research, overtime, messengers, courier, "federal express" and word processing have been eliminated. All expenses described as "miscellaneous" have also been eliminated for failure to articulate. The court has also reduced travel expenses by 10% because such expenses appear to be at least that excessive.[29] The court has also reduced by 10% the expense of experts based upon failure by counsel to demonstrate the value and reasonableness of that expense. The total awardable expense is set forth in footnote.[30]

Based upon the foregoing, plaintiffs' counsel are awarded $366,856.60 in attorney fees and $61,471.77 in expenses, plus the amount of interest earned on those amounts since April 1986. This Memorandum Decision and Order will suffice as the court's final action on this motion; no further Order need be prepared by counsel.

---

**29.** For example, counsel from the Abbey firm spent $1,226.29 in attending a two hour hearing on settlement. The total travel by the Abbey firm is approximately $20,000.

**30.** Such expenses are broken down by firm as follows:

| | |
|---|---:|
| Abbey Firm: | $43,541.89 |
| Barrack Firm: | 898.51 |
| Fabian Firm: | 2,605.23 |
| Gold Firm: | 3,205.56 |
| Goodkind Firm: | 497.46 |
| Greenfield: | 619.62 |
| Kaufman: | 335.84 |
| Milberg: | $ 4,916.68 |
| Pomerantz: | 4,326.75 |
| Wolf: | 524.23 |
| | **$61,471.77** |

The above figures reflect the fact that the court has allowed postage to be recovered. The reason is that notification to the class is a significant expense beyond normal overhead expenses for postage. However, when an entry included, for example, both postage and a messenger expense, the court included only part of the requested lump entry.