**UNITED STATES of America, Plaintiff,**

v.

**Steven M. SELF, Defendant.**

**No. 90–CR–126G.**

United States District Court, D. Utah, C.D.

Nov. 24, 1992.

Peter McGrath, Dept. of Justice, Washington, DC, Gordon Campbell, Asst. U.S. Atty., for Utah, for U.S.

Ronald Barker, David Cundick, Salt Lake City, UT, Christopher Harris, Gary Fremerman of McCutchen, Doyle & Williams; William Hughes of Thelen, Marrin, Johnson & Bridges, Washington, DC, for Self.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter is before the court upon the application of defendant's counsel for attorneys fees pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A. The court has determined that oral argument would not be of material assistance to this court's determination. After review of the applications and the relevant case law, the court enters its Memorandum Decision and Order.

### FACTS

The defendant, Steven M. Self, was indicted on May 30, 1990, on twelve counts of violating the federal environmental laws.

Mr. Self engaged attorneys in the Orange County branch of the law firm of Thelen, Marrin, Johnson & Bridges ("Thelen, Marrin") to conduct his defense because they had been his lawyers for the past several years. He was referred to the Washington, D.C. branch of Thelen, Marrin, who agreed to represent him. It was understood that Mr. Self would hire local counsel to handle the non-environmental issues, and that Thelen, Marrin would provide expertise as to the environmental issues. Mr. Self decided upon the Barker firm after working briefly with an attorney from another Salt Lake City firm.

Both Thelen, Marrin and the Barker firm spent a considerable amount of time and money on Mr. Self's defense from mid–1990 to mid–1991. Thelen, Marrin has billed Mr. Self over $200,000 and has been paid over $100,000. Ronald Barker and David Cundick, the local lawyers handling Mr. Self's defense, have billed over $100,000 and were paid over $50,000. In October of 1991, both firms filed motions to withdraw as counsel due to Mr. Self's inability to meet his legal bills. In this regard, Patrick Cavanaugh and Randolf Katz of Thelen, Marrin represented that the entire environmental law practice of Thelen, Marrin had moved to the law firm of McCutchen, Doyle, Brown & Enersen, ("McCutchen, Doyle") and therefore Thelen, Marrin no longer had the expertise to handle a case such as Mr. Self's.

■ On November 1, 1992, this Court denied both firms' motion to withdraw. At a hearing in Chambers on January 7, 1992, the Court further determined that Thelen, Marrin would be required to designate at least one attorney to represent Mr. Self, and that McCutchen, Doyle would be held to the same requirement.[1] These attorneys, Christopher Harris and Gary Fremerman from McCutchen, Doyle, and William Hughes from Thelen, Marrin, were subsequently appointed under the Criminal Justice Act ("CJA") to represent Mr. Self, effective January 7, 1992. Attorneys David Cundick and Ronald Barker of the Barker firm were approved for appointment under the CJA on January 9, 1992,

---

1. Counsel in this case have requested compensation for relatively insignificant amounts of time billed by associates in their firm who aided in research. These associates have not been appointed under the CJA, and their time will not be compensated.

effective November 1, 1991. Sometime after the trial and completion of all proceedings, William F. Hughes of Thelen, Marrin, Johnson & Bridges submitted a request for $68,-900.31 in fees and expenses; Christopher K. Harris of McCutchen, Doyle, Brown & Enersen submitted a request for $136,375.17 in fees and expenses (primarily for Gary Fremerman and himself); Ronald C. Barker submitted a request of $1,072.00 in fees and expenses; and David C. Cundick submitted a request for $21,688.74 in fees and expenses.[2]

William Hughes, Christopher Harris, Gary Fremerman, and David Cundick, billed 764.7, 755.80, 593.75, and 473.7 hours respectively. As the hours attest, these lawyers took their responsibilities in this case very seriously. The Court was impressed with their dedication, and with the excellence of their representation of Mr. Self.

## ANALYSIS

Upon analysis of the time spent by the various attorneys, it appears that there was substantial duplication of effort at hearings and conferences, and review of the time logs suggests to the Court that the attorneys billed "raw" time rather than "hard" or "billable" time.

A. *Time Spent by Attorneys Must be Reasonable and Not Duplicative*

The Tenth Circuit in *Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983) noted that time spent by attorneys is not compensable unless reasonably expended.[3] The court said: "Compiling raw totals [of time] spent, howev-

er, does not complete the inquiry. It does not follow that the amount of time *actually expended* is the amount of time *reasonably expended.*" *Id.* at 553 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980) (en banc) (emphasis in original)). The importance of this distinction is explained in *Ramos:*

> Lawyers charging fees to adversaries rather than clients may be less likely to carefully scrutinize the hours spent to determine if payment for the task performed is justified. Thus, it would not be surprising that reported hours would include *time spent reading background cases ...* and other materials designed to familiarize the attorney with this area of the law—*time that would be absorbed in a private firm's general overhead and for which the firm would not bill a client.*

*Id.* at 554 (emphasis added).

■ Presence of multiple counsel at hearings and court proceedings often is duplicative and unnecessary.[4] Excessive review of background materials may amount to charges for self-education. Excessive review of documents, motions, memoranda and the work of other counsel may represent lack of coordination among counsel or unnecessary overlap of effort for which clients ought not to be charged.[5]

B. *Compensation Under Criminal Justice Act*

■ The same concerns as set forth above apply when the "adversary" is the

---

**2.** On February 24, 1992, the Court certified, under 18 U.S.C. § 3006A(a), (d)(3), reasonable attorneys fees in excess of the $3,500 limit in light of the complex and extended nature of Self's defense.

**3.** In addressing duplication of time and reasonableness of time spent, this court said in *In re WICAT Securities Litigation*, 671 F.Supp. 726, 734 (D.Utah 1987):

> After careful review of the fee applications and the requested supplemental submissions, this court is of the opinion that the fee requests contain a great deal of duplication and generally excessive hours. The Tenth Circuit has directed that plaintiffs' counsel, and ultimately the court, distinguish "raw" time from "hard" or "billable" time in calculating reasonable fees. *Ramos v. Lamm*, 713 F.2d 546, 553 (10th

Cir.1983). Accordingly, this court must reduce the submitted hours to include only those found by the court to have been reasonably expended...."

**4.** The Tenth Circuit said in *Ramos* that "'[if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.' ... The more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services." *Ramos*, 713 F.2d at 554 (citations omitted).

**5.** This court observed in the case of *In re WICAT Securities Litigation*, 671 F.Supp. 726, 736 (D.Utah 1987), that designation of time spent in attorneys' logs under the catch-all category of "review" may signal padded hours, excessive duplication of effort and inefficient delegation of responsibility among attorneys.

federal government. The Criminal Justice Act provides compensation for time "reasonably expended" and expenses "reasonably incurred." 18 U.S.C. § 3006A(d)(1). In determining the total amount of reasonable time and expense, it is necessary to keep in mind that appointments under the Criminal Justice Act "are to protect the rights of the indigent accused, and they are neither to be sought nor made for the purpose of providing income to attorneys. Indeed, acceptance of an appointment under the Act is tantamount to acceptance of a public service." *United States v. Cook*, 628 F.Supp. 38, 41 (D.Colo. 1985) (citations omitted).

In *Cook*, counsel submitted an application for $24,178.11 in attorneys fees and costs under the CJA for defendant's representation in a complex drug conspiracy case. The court began its assessment of the reasonableness of the fee by comparing the number of in-court hours with the number of out-of-court hours. Tenth Circuit Judge Moore, sitting by designation, concluded thusly:

> Upon examination of the application in this case, one is immediately impressed with the *number of hours spent outside the court*. Indeed, counsel's memorandum respecting fees indicates the expenditure of 323.3 hours. When one considers trial in this case consumed only 27.75 hours, and the voluminous evidentiary hearings and arguments on pretrial motions consumed only another 33.5 hours, *the time spent in preparation therefore seems grossly disproportionate*. Upon reflection, I believe this may in part be a function of the fact that *this was the first criminal trial of any kind conducted by counsel*, who has been a member of the practicing bar since October 1982. It is evident here, that counsel spent a great deal of time in educating himself in subject areas a more experienced practitioner would have been familiar with without lengthy study. Notwithstanding the expenditure of time, with which I neither quarrel nor find disputed, *the fundamental purposes of the Criminal Justice Act interdicts countenance of the*

*payment of attorneys fees for the furtherance of counsel's education.*

*Id.* at 42 (emphasis added).

### C. The Case at Bar

During the relevant time period in this case, there were approximately 4 hours of pre-trial motions, approximately 80 hours of actual trial time (eight 10 hour days), and approximately 1 hour of sentencing hearing, for a total of 85 hours. In contrast, the out-of-court hours spent by Hughes, Harris, Fremerman and Cundick ranged from 409.4 hours to almost 700 hours. As in *Cook*, a partial explanation for the "grossly disproportionate" out-of-court hours appears to be the lack of criminal defense experience of almost all of the attorneys involved. Indeed, this was the first substantial criminal trial experience for almost all of the attorneys. Also, examination of the attorneys' work records reveals extensive time devoted to "review" of background materials. Since the CJA "interdicts countenance of the payment of attorneys fees for the furtherance of counsel's education," this court is compelled to make substantial cuts to reflect a more reasonable assessment of the amount of out-of-court hours.

### 1. *Thelen, Marrin and McCutchen, Doyle*

After review of each attorney's hours, consideration of the attorneys' inexperience, and taking into account the nature of the proceedings, this Court has determined that it would be reasonable as a rule of thumb in this case to allow Christopher Harris 2.5 hours of out-of-court compensable time for each hour of in-court time because he was primarily responsible for handling the environmental issues. This would result in 212.5 out-of-court hours to be added to the 85 in-court hours, for a total of 297.5 hours. At the adjusted statutory rate of $75 per hour,[6] this entitles Mr. Harris to attorneys fees of $22,312.50.

William Hughes was quite extensively involved in researching the issues in this case, but had substantially less responsibility at trial. For this reason his compensable

---

**6.** The Judicial Conference has approved an alternative rate in CJA cases for the District of Columbia of $75/hour for both in and out-of-court time.

out-of-court time will be two times in-court time, or 170 hours. When added to Mr. Hughes' in-court time, his total becomes 255 hours for an attorneys fee of $19,125.00.

 Gary Fremerman was less extensively involved in research, and also played a more limited role at trial.[7] His compensable out-of-court time is fixed by the Court at two times in-court time, or 130 hours. When added to Mr. Fremerman's in-court time, his total becomes 195 hours for an attorneys fee of $14,625.00.

As for the issue of expenses, this Court finds that Mr. Hughes' expenses of $11,547.81 were reasonably incurred and are granted in full. Those of Mr. Harris and Mr. Fremerman are granted except as to fees requested for paralegals. It is not clear to the Court that the rate charged for paralegal services in the application reflects actual out-of-pocket expense of employing paralegals as required under 18 U.S.C. § 3006A(d)(1). If counsel continue to claim compensation for employing paralegals, further documentation should be submitted to the Court by December 15, 1992, to establish the actual out-of-pocket expense of employing paralegals.

### 2. *Barker Firm*

 Mr. Barker, the only attorney involved who has had extensive criminal trial experience, was initially lead counsel in this case. Health difficulties forced him to take a less active role in the proceedings. Mr. Barker's fee application is granted in full because he significantly cut duplicative or unproductive time on his own to arrive at the figure of $1,072.00. The Court is satisfied that this is a reasonable fee for his services.

 Mr. Cundick was designated as substitute lead counsel in this case. Due to his position of responsibility, the Court deems it appropriate to allow 3 hours of out-of-court time for each hour of in-court time for a total of 259.2 hours.[8] Mr. Cundick is

therefore entitled to $15,552.00 in attorneys fees.[9] His request for expenses of $1,454.74 is reasonable and is granted in full.

IT IS SO ORDERED.

---

7. Mr. Fremerman only attended the second week of trial, however he did spend a significant amount of time during the first week aiding the attorneys present at trial. The Court has determined that it would be reasonable to grant him 65 hours of in-court time.

8. Mr. Cundick's in-court hours (86.4 total) differ from those of Washington counsel because he

was appointed somewhat earlier under the CJA Act.

9. For Salt Lake City counsel under the CJA, in-court hours are compensated at $60/hour, and out-of-court hours are compensated at $40/hour. Therefore, Mr. Cundick is entitled to $5,184.00 for the 86.4 hours spent in-court, and $10,368.00 for the 259.2 hours spent out-of-court.