**UNITED STATES**

v.

**Elijah Oneal SMITH.**

**No. Crim.A. G–99–5.**

United States District Court,
S.D. Texas,
Galveston Division.

Dec. 6, 1999.

Jerome Godinich, Jr., Attorney at Law, Houston, TX, defendant.

Richard Harris, Office of U.S. Atty., Houston, TX, for U.S.

## ORDER DENYING REIMBURSE-MENT UNDER § 3006A(d) OF THE CRIMINAL JUSTICE ACT

KENT, District Judge.

Jerome Godinich, Jr., as Court appointed counsel, represented Defendant Elijah Smith in Smith's criminal trial. Upon termination of the representation, Godinich submitted a voucher requesting fees and travel expenses pursuant to the Criminal Justice Act of 1964, 18 U.S.C. § 3006A(d). For reasons explained more fully below, the Court refuses to authorize the full amount requested by Godinich.

### I. Factual Background

Jerome Godinich, Jr., a Houston based attorney, indicated his willingness to serve as court appointed counsel in criminal matters by placing his name on a list maintained by the Court for such purposes. Godinich represented Defendant Elijah Smith in Smith's trial for possessing, with intent to distribute, more than five grams of cocaine base. After Smith's conviction and sentencing, Attorney Godinich submitted Voucher No. 0886234, seeking fees and travel expenses pursuant to the Criminal Justice Act of 1964, 18 U.S.C. § 3006A(d).

The grand total on the voucher as originally submitted was $1397.50. Godinich claimed 16.5 hours for out-of-court travel time, as well as 800 miles, at $.30/mile, for travel expenses. As reflected on the voucher, the claimed travel time and mileage expense was largely due to Godinich's decision to travel back and forth between Houston and the Galveston City Jail, where Mr. Smith was incarcerated. The Court was unpersuaded that such face-to-face client conferences were truly necessary or reasonable, and so reduced the out-of-court travel time to 6.3 hours, and adjusted the claimed mileage downwards to 300 miles. These changes resulted in an adjusted grand total of $1283.50, a reduction of slightly more than eight percent. Informed of the Court's decision to reduce his claimed expenses, Godinich sent a letter on the following day asking the Court to reconsider. The Court has given the matter careful attention, and declines to disturb its original decision.

### II. Duty to Safeguard Taxpayer Funds

■ When a court appointed defense attorney submits a voucher requesting compensation and reimbursement for expenses pursuant to the Criminal Justice Act ("CJA"), that attorney is making a direct claim upon the limited resources of the U.S. Treasury. The Court is firmly convinced that it has an inherent obligation to scrutinize these requests, make necessary adjustments, and thus safeguard these taxpayer provided funds. The Court takes this obligation seriously, for without close scrutiny, there is little to prevent the dissipation of taxpayer money on unreasonable or downright frivolous activities by court appointed defense counsel.

■ The Court emphatically rejects the suggestion that it must simply rubber-stamp a voucher in whatever amount a defense attorney has the audacity to request. It is true that the CJA provides that "the appointed attorney *shall,* at the conclusion of the representation" be paid a set rate. 18 U.S.C. § 3006A(d)(1) (emphasis added). But despite the presence of the word "shall," the statute cannot reasonably be read to foreclose the exercise of judicial oversight. This is so because the statute also expressly provides that an attorney will be compensated at the rate of $40 per hour "for time *reasonably* expended out of court" and shall be reimbursed for "expenses *reasonably* incurred." *Id.* (emphasis added). Section 3006A(d)(5) provides that a "claim for compensation and reimbursement shall be made to the district court" and the "court shall fix the compensation and reimbursement to be paid to the attorney." Thus the district court, as the body empowered to "fix" compensation, clearly has the power to determine what is a reasonable expense or a reasonable use of billable time. *See United States v. Self,* 818 F.Supp. 1442, 1446 (D.Utah 1992) (reaching similar conclusion); *United States v. Cook,* 628 F.Supp. 38, 41 (D.Colo.1985) (examining

claim for time and expenses "in light of the standard of reasonability.").

Section 3006A(d)(4)(C)(i) provides that if "a request is not submitted until after the completion of the trial . . . the court shall make available to the public an unredacted copy of the expense voucher." Thus the fact that Congress elected to cast the disinfecting sunshine of public scrutiny upon such fee requests supports the conclusion that Congress intended for there to be meaningful oversight over CJA vouchers.

█ While this Court has an inherent obligation to act as a trustee of public funds, appointed defense attorneys have a correlative obligation, namely, to fulfill their time-honored commitment, as officers of the court, to provide a minimal amount of pro bono services to indigent clients. Accepting work as a court appointed attorney under the CJA "is tantamount to acceptance of public service." *Cook,* 628 F.Supp. at 41. "Such appointments are to protect the rights of the indigent accused, and they are neither to be sought nor made for the purpose of providing income to attorneys." *Id.* The purpose of the Act "is not to provide compensation such as would be charged non-indigent clients under private retainers, but to 'take the sting' out of the practice formerly obtaining of requiring members of the Bar to represent indigent defendants without pay and without reimbursement for necessary expenses." *United States v. James,* 301 F.Supp. 107, 127 (W.D.Tex.1969); *see also United States v. Smith,* 633 F.2d 739, 741 (7th Cir.1980) (noting that "[t]he Criminal Justice Act is in no way an attorney's full-employment act," and expressing little sympathy for those attorneys "who look upon the Criminal Justice Act as a profit center"); *Self,* 818 F.Supp. at 1442 (rejecting a fraction of the claimed time and expenses as "unreasonable" and thus not authorized under the CJA).

█ The Court concludes that the time and expenses Godinich expended to engage in face-to-face meetings with his client in the Galveston City Jail are not "reasonable" expenses, and thus not compensable under the CJA. In the first place, a Houston based lawyer who places his name on a Galveston court's appointed counsel list should foresee the possibility of some unreimbursed travel expenses. Non-local counsel should hardly expect that every second of their travel time, and every penny of their travel expenses, will be paid for by the American taxpayer.

Second, it is not always reasonable to conduct multiple face-to-face meetings with a distant client, especially if the expense is being borne by others. The Court is sympathetic to the plight of a jailed defendant who seeks reassurance and solace from his attorney, and the Court also recognizes that an occasional visit to a client incarcerated in a remote facility may be a reasonable use of time and money. But not every face-to-face meeting is justifiable simply because the client is distraught and upset in a faraway jail cell. Many routine matters can be handled more expeditiously and economically by the intelligent use of the telephone.

█ Third, in this day of cell phones, car phones, mobile fax machines, portable laptops, and other marvels of technology, travel time need no longer be unproductive "dead time." An attorney can be productively engaged doing the work of other clients while traveling, and consequently has no right to expect that his fellow taxpayers should automatically pay for time only nominally expended on behalf on an indigent client.

The Court does not want to leave the impression that Mr. Godinich's exertions were frivolous, or that his request for reimbursement was made in bad faith. The Court is simply concluding that a portion of his claimed expenses were not "reasonable" for purposes of CJA reimbursement, which necessitates an eight percent downward adjustment. No doubt Mr. Godinich's efforts on his client's behalf were entirely commendable. What is commendable, however, is not necessarily compensable.

## III. Appellate Review of Attorney Fees Under § 3006A(d)

■ The Court's recognition that it has an inherent obligation to scrutinize requests by attorneys for reimbursement under the CJA is further strengthened by its conclusion that there is no appellate review of its administrative decisions in this regard. Thus if this Court shirks its responsibility to safeguard taxpayer funds, there is no other body capable of performing that crucial oversight function.

### A. Circuit Court Precedent

The Second, Third, Sixth, Seventh, Ninth, Tenth, Eleventh, and Federal Circuits have all squarely held that district court determinations of attorney fees pursuant to § 3006A(d) of the CJA are administrative decisions, not judicial ones, and thus are not "final decisions" for purposes of supporting appellate jurisdiction under 28 U.S.C. § 1291. *See United States v. Bloomer*, 150 F.3d 146, 148 (2nd Cir.1998) (fee determinations, under § 3006A(d), for services previously rendered are not appealable final orders); *Landano v. Rafferty*, 859 F.2d 301, 302 (3rd Cir.1988) (district court decision denying request for retroactive appointment of counsel and waiver of maximum allowable fee under CJA is not an appealable final order under 28 U.S.C. § 1291); *United States v. Stone*, 53 F.3d 141, 142 (6th Cir.1995) (trial court's decision to reduce attorney compensation from $47,077.36 to $33,693.80 is neither an appealable final judgment nor an appealable "collateral order"); *Smith*, 633 F.2d at 741 (decision disallowing fees in excess of statutory maximum not reviewable on appeal); *United States v. Walton*, 693 F.2d 925, 927 (9th Cir.1982) (trial court's reduction of fees from $57,468.86 to $35,565.86 is an administrative act, not a § 1291 final order, hence no appeal will lie); *United States v. Davis*, 953 F.2d 1482, 1497 n. 21 (10th Cir.1992) (although writ of mandamus may issue to correct district court's utter refusal to review CJA vouchers and forward them for payment, trial court's determination of fees is not an appealable final order); *United States v.*

*Rodriguez*, 833 F.2d 1536, 1538 (11th Cir. 1987) (no appellate review of district court's refusal to certify fee award in amount requested); *Shearin v. United States*, 992 F.2d 1195, 1196 (Fed.Cir.1993) (district court's refusal to consider request for fees which was untimely under the local rules was not an appealable decision). No circuit to directly confront this issue has held otherwise. *See Stone*, 53 F.3d at 142. Two Circuits have not directly confronted the jurisdictional issue but allowed review. *See United States v. Turner*, 584 F.2d 1389, 1389 (8th Cir.1978) (per curiam) (allowing appeal where jurisdictional issue not raised); *United States v. Ketchem*, 420 F.2d 901, 903 (4th Cir.1969) (allowing appeal without jurisdictional analysis).

Three grounds support the conclusion that fee determinations under the CJA are unappealable. First, the express language of § 3006A(d) of the CJA makes no provision for appellate review. *See Bloomer*, 150 F.3d at 148; *Landano*, 859 F.2d at 302; *Stone*, 53 F.3d at 142; *Smith*, 633 F.2d at 739; *Walton*, 693 F.2d at 926; *Rodriguez*, 833 F.2d at 1537; *Shearin*, 992 F.2d at 1196.

Second, nothing in the legislative history of the CJA indicates that Congress intended for fee determinations to be subject to appellate scrutiny. *See Bloomer*, 150 F.3d at 149; *Landano*, 859 F.2d at 302; *Smith*, 633 F.2d at 739; *Walton*, 693 F.2d at 926.

Third, the trial court's review of a fee request is made in a non-adversarial administrative setting, not in a judicial setting. Fee awards under the Act are not dependent on the outcome of the case, unlike fee awards in certain types of civil litigation. There is no governmental involvement in the fee determination, no adversarial hearing on the fee issue is held, and the appointed defense attorney serves no notice to the United States in its capacity as a party to the criminal litigation. Because the trial court's decision is simply an administrative fee-setting act under the CJA, not a judicial act affecting the litigation between the parties, is it not a "final

decision" for purposes of appellate jurisdiction pursuant to 28 U.S.C. § 1291. *See Walton*, 693 F.2d at 927 (CJA attorney fee awards are unlike awards in civil cases because "the duty of payment arises not from the litigation itself but from the independent provisions of the CJA, and it is in a sense fortuitous that the payment comes from the same treasury that funds the prosecution"); *Smith*, 633 F.2d at 741 (fee-setting not a judicial decision because "none of the indicia accompanying an adversary proceeding exist"); *Bloomer*, 150 F.3d at 148 ("fee determinations concerning services already rendered are administrative, rather than judicial, determinations"); *see also Landano*, 859 F.2d at 302; *Stone*, 53 F.3d at 143; *Walton*, 693 F.2d at 927; *Rodriguez*, 833 F.2d at 1538.

### B. Fifth Circuit Authority

Of course, if the Fifth Circuit had addressed the issue of appealability, it is irrelevant what the Second, Third, Sixth, Seventh, Ninth, Tenth, Eleventh, and Federal Circuit have decided. But it appears to the Court that the Fifth Circuit has not settled this issue.

In 1972, the Circuit recognized, but did not decide, the question "whether a trial judge's decision on compensation under [the CJA] is appealable at all." *United States v. Sullivan*, 456 F.2d 1273, 1275 (5th Cir.1972); *see also United States v. Todd*, 475 F.2d 757, 759 n. 3 (5th Cir.1973) (citing *Sullivan*, and declining to review adequacy of fee allowed appellant's counsel). What is clear is that an appeal of the defendant's conviction is not the proper vehicle for seeking appellate review of the adequacy of appointed counsel's fee. *See United States v. Breeland*, 53 F.3d 100, 102 n. 1 (5th Cir.1995).

It is clear that an indigent defendant is entitled to a free trial transcript under § 3006A(e) of the CJA. *See United States v. Pulido*, 879 F.2d 1255, 1256 (5th Cir. 1989). The right to a free trial transcript has little bearing on the issue of attorney fee determinations under § 3006A(d).

It is also well settled in the Fifth Circuit that a trial court's refusal to appoint an investigator or other expert pursuant to § 3006A(e) is subject to appellate scrutiny. *See United States v. Gadison*, 8 F.3d 186, 191 (5th Cir.1993) (trial court's decision to authorize investigative services under § 3006A(e) reviewed for abuse of discretion, but on basis of the information available to trial court at the time it acted on the motion); *United States v. Theriault*, 440 F.2d 713 (5th Cir.1971). But the existence of appellate jurisdiction over payments under § 3006A(e) does not settle the question of whether appellate jurisdiction exists for attorney fee determinations under § 3006A(d). Expert services paid for under § 3006A(e) are considered necessary to the defense at trial. Unlike defense counsel, defense experts are under no ethical obligation to render professional services on a pro bono basis. Other Circuit courts have reviewed fee determinations under § 3006A(e) while also holding that attorney fee awards under § 3006A(d) do not support appellate jurisdiction. *Compare United States v. Roman*, 121 F.3d 136, 143 (3rd Cir.1997) (reviewing § 3006A(e) award for psychiatrist under abuse of discretion standard) *with Landano*, 859 F.2d at 302 (no appellate jurisdiction over determination of attorney fee under § 3006A(d)); *United States v. Daniels*, 64 F.3d 311, 315 (7th Cir.1995) (reviewing refusal to appoint eyewitness expert under abuse of discretion standard) *with Smith*, 633 F.2d at 741 (no appellate jurisdiction over attorney fee determination); *United States v. Gossett*, 877 F.2d 901, 903 (11th Cir.1989) (reviewing refusal to fund an investigator pursuant to § 3006A(e)) *with Rodriguez*, 833 F.2d at 1538 (no jurisdiction over § 3006A(d) attorney fee award determinations).

The only other relevant Fifth Circuit authority the Court has been able to locate is *Campanioni v. Barr*, 962 F.2d 461 (5th Cir .1992). The *Campanioni* decision involved an interlocutory appeal from a habeas corpus proceeding. Judge Justice, the presiding trial court judge, decided to

appoint, pursuant to the CJA, counsel for five Cuban refugees detained by the Immigration and Naturalization Service. *See id.* at 461–62. The Attorney General attempted to obtain appellate review of the district court's decision to appoint counsel. *See id.* The Attorney General maintained that the appointment decision was an appealable interlocutory order because, while it was not an ordinary final judgment, it fell within the "collateral order" exception established by the Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

Although the *Campanioni* court recognized that the trial court had not yet awarded or even calculated attorney fees, it was assumed that the Attorney General's real objection was the possibility that appointed counsel would eventually be granted attorney fees under the CJA. *See id.* at 462. The *Campanioni* court then rejected the contention that the appointment order was an appealable order, holding that the order did not fit within the *Cohen* "collateral order" exception. *See id.* at 462–63.

It is possible to read *Campanioni* as implicitly holding that attorney fee determinations under § 3006A(d) are appealable final orders. This is so because the reason given for why the trial court's appointment order was not a *Cohen* collateral order was that it failed the third prong of the *Cohen* test. The third prong of the *Cohen* test requires an order to be "effectively unreviewable on appeal from a final judgment." *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468–69, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978); *Campanioni,* 962 F.2d at 463. Thus for the *Campanioni* court to conclude that the order was not within the *Cohen* exception, it apparently assumed that an award of attorney fees would be reviewable on appeal after a final judgment.

Although not without some superficial plausibility, this is a strained reading of *Campanioni,* and the Court concludes that *Campanioni* does not really stand for the proposition that attorney fee determinations under § 3006A(d) support appellate jurisdiction. First, there was an express alternative basis for the holding in *Campanioni,* one that does not depend on the supposition that an award of attorney fees under § 3006A(d) supports appellate jurisdiction. It was considered significant that the Attorney General appealed before there was any award or even calculation of a specific amount of fees. See *Campanioni,* 962 F.2d at 463. "This court has held that an order granting fees is not reviewable independent of the merits prior to a calculation of the amount of fees." *Id.* Thus the holding of *Campanioni*—that a decision to appoint counsel under the CJA does not fall within the *Cohen* collateral order exception—does not absolutely require the premiss that fee awards are appealable final judgments.

Second, the more natural reading of *Campanioni* is that it may only imply the existence of appellate jurisdiction over the question whether counsel was properly appointed and due *any* fees under the CJA, as opposed to the question of the proper amount of fees due an attorney whose appointment under the CJA was manifestly proper. After all, the central issue in *Campanioni* was the propriety of appointing attorneys to represent illegal aliens who were pursuing habeas relief against the INS for detaining them prior to deportation. Whether the CJA authorizes appointment of taxpayer funded attorneys under these circumstance is certainly a debatable proposition, and is an issue far removed from the typical situation in which an attorney is appointed under the CJA to represent an indigent U.S. citizen in an ordinary criminal prosecution.

Third, the Court is not persuaded that *Campanioni* implies the existence of appellate jurisdiction over § 3006A(d) attorney fee determinations, because *Campanioni* did not cite or discuss *Sullivan* or *Todd,* the previous Fifth Circuit authority which left this question open. Of even greater significance is the fact that *Cam-*

*panioni* failed to cite the opinions of the Third, Seventh, Ninth, or Eleventh Circuits which had forthrightly analyzed this issue prior to *Campanioni.* It is thus unlikely that the *Campanioni* court was directly addressing the jurisdictional question.

Finally, the actual holding of *Campanioni*—that appointment of counsel under the CJA is not an appealable interlocutory order under the *Cohen* doctrine—is entirely consistent with the additional conclusion that § 3006A(d) attorney fee determinations are not appealable final judgments. *See Stone,* 53 F.3d at 142 (trial court's fee determination is neither an appealable final judgment nor an appealable "collateral order" under the *Cohen* exception).

Until such time as the Fifth Circuit directly addresses this question, the Court concludes that attorney fee determinations under § 3006A(d) are beyond appellate review. It follows that this Court is the only body in a position to exercise meaningful supervision over requests by appointed defense counsel for reimbursement out of the U.S. Treasury.

### IV. Conclusion

The Court recognizes that indigent defendants are entitled to a vigorous defense, and that the prospect of receiving reasonable compensation for professional services tends to encourage attorneys to undertake such representations. It was at least partly these considerations that motivated Congress to enact the CJA.

The Court has no intention of paring away fee requests out of a mindless devotion to principles of parsimony. But on the other hand, the court takes seriously its inherent obligation to safeguard the limited funds, supplied by American taxpayers, which are available for attorney reimbursement under the CJA. The Court also expects counsel, when accepting their appointments, to recognize their time honored public service obligations as Officers of the Court. Accepting appointments in a spirit of public service does not mean that attorneys should forego reimbursement for reasonable expenses. But it does mean that appointed counsel cannot expect to receive taxpayer dollars for all time expended and expenses incurred simply because they submit the requisite signed voucher.

The Court has determined that Mr. Godinich's face-to-face meetings with his client in the Galveston City Jail were not "reasonable" for purposes of CJA reimbursement. Accordingly, Godinich's original voucher in the amount of $1397.50 is reduced to $1283.50. Godinich's request that the Court reconsider this reduction is **DENIED.** Voucher No. 0886234, in the corrected amount, is **APPROVED,** and will be forwarded for payment as of the date of this opinion. Mr. Godinich is **OR-DERED** to file no further requests for reconsideration of this issue, but is directed to seek appellate relief, if it is available, in the United States Court of Appeals for the Fifth Circuit.

**IT IS SO ORDERED**

**DONE.**