**Anthony GRAVES**

v.

**Gary JOHNSON, Director, Institutional Division, Texas Department of Criminal Justice**

No. CIV.A. G–00–221.

United States District Court,
S.D. Texas,
Galveston Division.

June 9, 2000.

gins also called White an "elder" on two or three occasions. (*See* Deposition of Jack G.

White at 95.)

Roy E Greenwood, Attorney at Law, Austin, TX, Jay W. Burnett, Attorney at Law, Houston, TX, for Anthony Graves, petitioners.

Gena Blount Bunn, Texas Attorney General, Austin, TX, for Gary Johnson, Director, TDCJ, ID, respondents.

***ORDER GRANTING PETITIONER'S MOTION FOR PRIVATE INVESTIGATOR FUNDS AND STRIKING PETITIONER'S EX PARTE AFFIDAVIT OF COUNSEL IN SUPPORT OF PRIVATE INVESTIGATOR FUNDING MOTION***

KENT, District Judge.

Petitioner Anthony Graves was convicted of capital murder for his role in the 1992 murders of Bobbie Davis, Davis' 16–year–old daughter Nicole Davis, and Davis' four grandchildren; 4–year–old Jason Davis, 4–year–old Lea'Erin Davis, 6–year–old Brittany Davis, and 9–year–old Denitra Davis. Petitioner Graves received the death penalty for his role in the commission of these flagitious crimes.

Robert Carter, Petitioner's co-defendant, was also convicted of capital murder and sentenced to death. Prior to Carter's execution on May 31, 2000, Carter recanted his trial testimony which had implicated Graves in the murders. Counsel for Graves memorialized Carter's recantation in a deposition taken May 18, 2000 at the Death Row Unit of the Texas Department of Corrections.

Now before the Court is Petitioner's Motion For Private Investigator Funds, filed May 9, 2000, and Petitioner's Ex Parte Affidavit Of Counsel In Support Of Private Investigator Funding Motion. For reasons explained more fully below, Petitioner's Motion For Private Investigator Funds is **GRANTED**, and the Court approves **UP TO $2500** for the services of a private investigator. The Court refuses to consider Petitioner's Ex Parte Affidavit Of Counsel In Support Of Private Investigator Funding Motion, and **ORDERS** that this filing be **STRICKEN** from the record of this case.

## I. Petitioner's Motion For Private Investigator Funds

■ In capital cases, section 848(q) of the Anti–Drug Abuse Act of 1988 governs requests for funding for expert and investigative services by indigent habeas corpus petitioners challenging the constitutionality of their convictions and death sentences. *See* 21 U.S.C. § 848(q)(9). As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the statute provides, in relevant part:

Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under paragraph (10).

21 U.S.C. § 848(q)(9).

Petitioner alleges that the services he seeks are reasonably necessary to the development of the factual and legal bases for his petition. The Court concludes that Petitioner's request largely satisfies the requirements of § 848(q)(9). Consequently, the Court hereby **AUTHORIZES** up to $2500 for the services of a private investigator.

The Court has recently had an unfortunate experience with investigative funding in an unrelated habeas action. In that unrelated action, the Court initially approved a specific amount for various services under § 848(q)(9), but expressly permitted counsel to petition the Court for additional funding on a very specific showing of good cause. Regrettably, a significant amount of the Court's limited judicial resources were diverted to weighing and deciding the merits of numerous follow-up requests for additional funding. Consequently, in the instant action, the Court will approve up to **$2500** as the **SOLE** and **FINAL** authorization: the Court will un-

der no circumstances approve any additional funds for a private investigator.

In addition, counsel for Petitioner is advised that upon conclusion of the investigation, the formal request for payment should be SUFFICIENTLY DETAILED to permit the Court to assess whether all expenses incurred were "reasonably necessary" for the representation of the Petitioner. The Court takes its obligation to safeguard the limited funds of the United States Treasury very seriously. *See United States v. Smith,* 76 F.Supp.2d 767, 768 (S.D.Tex.1999)(Kent, J.)(noting that the court has an inherent obligation to carefully scrutinize requests for compensation and reimbursement, and to make necessary adjustments, in order to protect the taxpayers of the United States).

## II. Petitioner's Ex Parte Affidavit Of Counsel

■ The Court is in receipt of a letter written by Roy E. Greenwood, counsel for Petitioner. Attached to the letter is a sealed envelope containing an affidavit by Mr. Greenwood. This envelope is securely taped, and bears the inscription "Ex Parte Affidavit—Not To Be Filed—For Court's Eyes Only." The accompanying letter makes it clear that a copy of the affidavit was not mailed to Respondent, and that the affidavit was intended to be submitted directly to the Court for its consideration.

The are two problems with Petitioner's attempt to submit such an ex parte affidavit. The first, and most obvious problem, is that the affidavit contains no information which is not already known to the Respondent. For example, the Respondent is surely aware that Petitioner's co-defendant, Mr. Carter, recanted his trial testimony. After all, attorneys for the Respondent were involved in arranging for a deposition of Mr. Carter at the prison just prior to Carter's execution, a deposition conducted precisely because Carter was recanting his trial testimony. It is also within the knowledge of Respondent that Mr. Carter again recanted his trail testi-

mony while he was strapped to the gurney awaiting execution. Curiously, attorney Greenwood included within his securely sealed envelope a copy of a newspaper account of Mr. Carter's execution. The Court is frankly baffled as to why Mr. Greenwood would think that a newspaper article—a public record—should be kept from the prying eyes of Respondent by being filed ex parte in a tightly sealed envelope.

The second problem with Petitioner's ex parte application is that it contravenes the provisions of § 848(q)(9), which provides, in relevant part:

> No ex parte proceeding, communication, or request may be considered pursuant to this section unless a proper showing is made concerning the need for confidentiality.

■ Petitioner appears oblivious to the fact that § 848(q)(9) requires a threshold showing of the need for confidentiality before the Court can allow him to proceed ex parte. Indeed, Petitioner failed to make any showing whatsoever of the need for confidentiality before lodging his ex parte request with the Court. Asserting a generic need for confidentiality of the sort which arises in most capital cases is not an adequate showing for purposes of the statute. *See Patrick v. Johnson,* 37 F.Supp.2d 815, 817 (N.D.Tex. 1999). Section 848(q)(9) unequivocally requires "a proper showing . . . concerning the need for confidentiality" *before* the Court may consider any ex parte communication or request. *See id.*

The Court recognizes the need for a procedure by which Petitioner may satisfy the threshold requirement imposed by the statute. Two other Courts in this Circuit have articulated a rule governing the application for investigative or expert assistance where there is an asserted need for confidentiality. *See id. (citing Dowthitt v. Johnson,* No. H–98–3282 (S.D.Tex. December 2, 1998)). This Court adopted the rule of its sister courts in a recently published opinion. *See Shields v. Johnson,* 48 F.Supp.2d 719, 720 (S.D.Tex.1999)(Kent, J.).

■ The procedure is relatively straightforward. First, Petitioner must file and serve a concise motion seeking authorization for investigative or expert assistance that includes a short, case-specific statement of the need for confidentiality. This statement of the need for confidentiality must generically identify the type of services needed and the broad issue or topic (for example, innocence) for which the services are needed. Second, Petitioner must simultaneously file ex parte and under seal his detailed application for authorization for the investigator or expert. In this application, Petitioner must estimate the amount of fees or expenses likely to be incurred and provide factual support for the funding request. The motion—but not the application with supporting materials—must be served upon Respondent. *See Shields,* 48 F.Supp.2d at 720; *Patrick,* 37 F.Supp.2d at 817.

In this case, Petitioner has failed to comply with the procedures previously adopted by the Court for securing leave to submit materials on an ex parte basis. Accordingly, the Court **ORDERS** that Petitioner's Ex Parte Affidavit Of Counsel In Support Of Private Investigator Funding Motion be **STRICKEN** from the record of this case.

**IT IS SO ORDERED.**