**Gayland BRADFORD, Petitioner,**

v.

**Gary JOHNSON, Director, TDCJ–ID, Respondent.**

**No. 3:00–CV–2709–P.**

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 24, 2001.

Victor J. Sasso, Jr., Law Office of Vic Sasso, Jr., Dallas, TX, Robert Patrick Abbott, Law Office of Robert P. Abbott, Coppell, TX, Mick Mickelsen, Broden & Mickelson, Dallas, TX, for petitioner.

Gaylord Bradford, Livingston, TX, pro se.

Gary Johnson, Director, Texas Department of Criminal Justice, Huntsville, TX, pro se.

### MEMORANDUM OPINION AND ORDER

BOYLE, United States Magistrate Judge.

Before the Court is petitioner Gayland Bradford's *Ex Parte* Application for Au-

thorization of Funds for Expert Assistance, filed August 8, 2001. In it, petitioner moves the Court, under 21 U.S.C. § 848(q)(9), to authorize funding for expert/investigative assistance in this capital habeas action. For the reasons that follow, the Court **DENIES** the motion without prejudice.[1]

## I.

Federal courts are authorized under the Anti–Drug Abuse Act of 1988 to provide investigative and expert assistance to indigent petitioners in capital habeas cases upon a showing that such services are "reasonably necessary." 21 U.S.C.A. § 848(q)(9) (West 1999); *see Fuller v. Johnson*, 114 F.3d 491, 501–02 (5th Cir. 1997).[2] The statute provides no guidance on what constitutes reasonable necessity and the Fifth Circuit has yet to weigh in on this precise issue. *See generally Patrick v. Johnson*, 48 F.Supp.2d 645, 646 (N.D.Tex.1999). Nonetheless, some crite-

rion by which to measure such requests can be gleaned from the case authority. In *Fuller*, the Fifth Circuit observed that "[t]he Supreme Court has held that the language of section 848(q)(4)(B)[3] '[o]n its face grants indigent capital defendants a *mandatory right* to qualified legal counsel *and related services*' in any federal post conviction proceeding." *Fuller*, 114 F.3d at 502 (emphasis added). In *Patrick*, the court commented that "established habeas corpus and death penalty precedent suggests that Congress intended to provide prisoners with all resources needed to discover plead, develop and present evidence determinative of their 'colorable' constitutional claims." *Patrick*, 48 F.Supp.2d at 646 (citing J. LIEBMAN & R. HERTZ, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 19.3 at 702 (3d ed.1998)).

In reviewing requests for investigative and expert services under § 848(q)(9), courts have identified various factors as relevant to the inquiry. However, on the

---

**1.** By separate order filed August 22, 2001, the Court has authorized petitioner to file his *ex parte* application under seal. Parties moving *ex parte* for investigative or expert assistance under 21 U.S.C. § 848(q)(9) must make a proper showing of the need for confidentiality before a court can consider their *ex parte* motion or request. 21 U.S.C. § 848(q)(9); *Patrick v. Johnson*, 37 F.Supp.2d 815, 816 (N.D.Tex.1999). The requisite showing has been interpreted to require a "short case-specific statement of the need for confidentiality." *Patrick*, 37 F.Supp.2d at 816; *see also Graves v. Johnson*, 101 F.Supp.2d 496, 499 (S.D.Tex.2000). Petitioner made the required showing, thus, the Court granted his motion to seal the above-referenced application.

**2.** 21 U.S.C. § 848(q)(9) provides:

(q) Appeal in capital cases; counsel for financially unable defendants

. . .

(9) Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating

to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under paragraph (10). No ex parte proceeding, communication, or request may be considered pursuant to this section unless a proper showing is made concerning the need for confidentiality. Any such proceeding, communication, or request shall be transcribed and made a part of the record available for appellate review.

**3.** 21 U.S.C. § 848(q)(4)(B) provides:

In any post conviction proceeding under section 2254 or 2255 of Title 28, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services *shall* be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9) (emphasis added).

whole, the rulings appear very case-specific and the analyses fact-intensive. Generally, courts have focused on the specificity with which petitioners have framed their requests noting particularly whether the proposed investigative or expert services can be tied to viable habeas claims of a constitutional magnitude. *See Fuller*, 114 F.3d at 502 (affirming district court's denial of expert assistance in part because the petitioner failed to claim that the proposed experts could show that any aspect of his trial violated his constitutional rights); *Patrick*, 48 F.Supp.2d at 646 (finding that to establish reasonable necessity under § 848(q)(9) "...a petitioner must present the court with *specific* allegations which demonstrate that he is confined illegally and entitled to relief."); *Cherrix v. Braxton*, 131 F.Supp.2d 756, 762 (E.D.Va.2000) (citing *Lawson v. Dixon*, 3 F.3d 743, 753 (4th Cir.1993)) (tying the "reasonable necessity" determination under Fourth Circuit authority to claims contained in the habeas petition). Even where a petitioner has established a nexus between the investigative or expert services and habeas claims of a constitutional dimension, some courts have refused to sanction funding where the claims or proposed claims are procedurally barred or where the claim itself would be futile. *Fuller*, 114 F.3d at 502 (claims procedurally barred); *Patrick*, 48 F.Supp.2d at 647 (same). *But see Patterson v. Johnson*, No. 3:99–CV–808–G, 2000 WL 1234661, at * 2 (N.D.Tex. Aug.31 2000) (petitioner entitled to investigative services to pursue procedurally defaulted claims regarding ineffective assistance of counsel). *See also Clark v. Johnson*, 202 F.3d 760, 768 (5th Cir.2000) (affirming denial of expert assistance because claim for which expert services were sought would

have been futile in view of strength of state's case and state court's fact findings, presumed correct under AEDPA[4] standards). Finally, some courts have declined funding where the habeas claims underlying the request are "speculative" claims or where the proposed investigation appears to call for a "fishing expedition." *See Patrick*, 48 F.Supp.2d at 647 (statute not designed to provide funding to investigate speculative claims "founded on mere suspicion and surmise"); *DeLong v. Thompson*, 790 F.Supp. 594, 616–17 (E.D.Va.1991) (investigative assistance denied because proposed investigation of trial counsel and trial judge constituted a "fishing expedition").

## II.

With the foregoing guidance, the Court turns to petitioner's application for expert/investigative assistance and finds that it falls short of its mark for several reasons. Specifically, in order for the Court to determine whether the proposed services are "reasonably necessary for the representation of the [petitioner]", as required by the statute, the Court must be apprized of the constitutional claims necessitating representation in the first place. Without such information, the Court is hamstrung in its ability to determine the reasonable necessity of the requested assistance. Petitioner's application itself fails to identify any specific habeas claims for which petitioner needs expert/investigative assistance. And because no habeas petition has been filed in this case, the Court cannot turn to that document for guidance on petitioner's claims of illegal confinement.[5] While a review of the state court records could provide elucidation on petitioner's likely claims, without a federal

---

4. Anti–Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. §§ 2241 *et seq.*

5. Petitioner, by agreement of the respondent, has been given until December 14, 2001 to file his habeas petition.

habeas petition, there are no state court records on file.

The attachments to petitioner's application do make mention of several possible issues "that deserve post-conviction investigation." However, a review of the attachments reveals that these numerous issues, identified by a non-lawyer, at best, constitute only potential claims of theoretical merit.[6] Additionally, because there is no indication from the attachments whether the topics for investigation stem from issues that were raised at the state court level, it is impossible to tell whether the numerous issues constitute potential claims that may be procedurally barred from consideration. As mentioned above, the Fifth Circuit and at least one district court have found expert/investigative assistance unwarranted for procedurally barred claims. *See Fuller*, 114 F.3d at 502; *Patrick*, 48 F.Supp.2d at 647.

While the Court recognizes that in *Patterson* a district court in this division authorized investigative assistance for a potentially procedurally barred claim, the facts in that case are distinguishable from those at hand. More to the point, in their application for assistance, Patterson's federal habeas counsel articulated a specific habeas claim of potential merit for which they sought investigative assistance. *Patterson*, 2000 WL 1234661, at *1 (citing *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 8, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) and *Williams v. Taylor*, 529 U.S. 420, 120 S.Ct. 1479, 1489, 146 L.Ed.2d 435 (2000)). Essentially, Patterson's habeas counsel claimed that his trial counsel had been ineffective for failing to investigate and develop mitigating evidence at trial. *Id.* Acknowledging that the claim was potentially procedurally barred, the district court, nonetheless, authorized funds for investigative assistance so that counsel could attempt to marshal facts to establish a constitutional violation and meet the cause and prejudice standard necessary to overcome a procedural bar. *Id.* at * 1–2. Here, as mentioned, petitioner's counsel did not articulate any potential habeas claims in his application for assistance. Instead, the Court was referred to the attachments wherein a non-lawyer identified numerous issues for "investigation." The sheer number of these prospective investigative issues and the fact that they are identified by a non-lawyer—as opposed to habeas counsel—distinguishes this case from *Patterson*. While the Court is not prepared to find that investigative assistance is never warranted for procedurally barred claims, it is entitled to know whether it is being asked to fund assistance for claims already presented or new claims that could be procedurally barred. Without this type of information, the Court is extremely limited in its ability to determine whether the requested assistance is reasonably necessary to the petitioner's representation. For example, if the claim has been raised in state court, a court should know why funds are necessary to re-investigate them. On the other hand, if the claims were not raised in state court, the court should be informed, at least in general terms, how the proposed investigation might aid in surmounting the likely procedural bar. The Court has no information of this nature in this case, rendering it impossible to determine whether petitioner's request for expert/investigative assistance is either reasonable or necessary. Accordingly, his application must be denied without prejudice.

Finally, the Court finds it appropriate to comment briefly on the fact that petitioner's estimated cost for the expert/investi-

---

6. Because the Court is filing this order publicly, it will refer to the issues discussed in petitioner's application and the attachments in general terms.

gative assistance was $7500, the presumptive statutory limit. *See* 21 U.S.C.A. § (q)(10)(B) (West 1999). To obtain funds beyond the presumptive limit, a petitioner must establish and the Court must certify to the chief judge of the circuit that the excess funds are "necessary to provide fair compensation for services of an *unusual character or duration . . . ." Id.* (emphasis added). Petitioner should bear in mind when reapplying for funds that the standard for obtaining funds beyond the $7500 presumptive statutory limit is stringent and temper the amount of his next request accordingly.

In sum, for the foregoing reasons, the Court **DENIES** petitioner's *Ex Parte* Application for Authorization of Funds for Expert Assistance, filed August 8, 2001. **SO ORDERED.**